Steven A. Korshak v. Catha A. Korshak

[442 A.2d 464]

No. 296-80

Present: Barney, C.J., Billings, Hill and Peck, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed February 2, 1982

548

*Richard I. Rubin,* Barre, for Plaintiff.

*Dorsch & Hertz,* Brattleboro, for Children.

*Weber, Perra & Gibson,* Brattleboro, for Defendant.

**Peck,** J. Defendant, Catha A. Korshak, and plaintiff, Steven A. Korshak, were divorced by an order of the Washington Superior Court dated October 10, 1978. The order, prepared in accordance with a stipulation of the parties, provided, *inter alia,* that each party in turn would have alternating custody of the three minor children for two-year periods. During the initial period, to expire with the commencement of the school year in September of 1980, the children were to make their home with their mother, with specified school holidays and vacations to be spent with the father.

In the summer of 1979, during the first two-year period, defendant advised plaintiff of her intent to move from Vermont to New York City and seek employment there. She asked plaintiff if he would take the children while she looked for work. Plaintiff agreed provided they remain with him for a period of two years. Notwithstanding there was never any formal modification of the court's order, this proposal was accepted by defendant and the children came to live with their father in Vermont on or about August 1, 1979, and were placed in local schools.

The children joined their mother for the Christmas vacation of 1979, with plaintiff's consent, but upon the former's agreement to return them to their father on January 5, 1980.

Once under her control in New York, however, and contrary to this understanding, defendant advised plaintiff that she would not return the children, but planned to move with them to California and seek employment there. She apparently believed she could repudiate the agreement arbitrarily and reinstitute the provisions of the court order any time she saw fit to do so. She had made no definite plans for the housing or education of the children in California, nor did she have any employment there waiting for her. The plaintiff on the other hand was gainfully employed in Vermont and the children well settled in the school year.

The plaintiff took no legal action to prevent the move; instead he went to New York, and in an incident that involved some actual physical violence against the defendant, he removed the children forceably from her apartment and returned with them to Vermont. However unfortunate this precipitous action by plaintiff, there is little doubt it was motivated by defendant's decision not to honor the agreement between them.

On March 6, 1980, plaintiff filed a motion in Washington Superior Court to modify the original divorce order; he requested full custody of the children, subject to reasonable visitation rights in the mother. Defendant countered with a contempt petition based on plaintiff's removal of the children from New York to Vermont, and a petition to modify the original order in which she, too, sought full custody of the children.

The lower court heard all of these matters together, made findings of fact and conclusions of law, and issued its order granting full custody to the plaintiff-father. Both petitions of the mother were denied; she thereupon appealed to this Court.

It is clear from the findings the court was satisfied that both parties are fit and competent parents, but that, as of the date of the proceedings, plaintiff was in a better position to provide the children with the stability and emotional security that they need. Finding that the best interests of the children would be served by awarding custody to the father, the court concluded:

> [T]he children are in need of stability in their lives at this time which can best be provided by STEVEN KOR-SHAK. CATHA has no specific plans for education, employment or place of residence. An award of custody to

CATHA would uproot the children from an environment where they have established good peer relationships and is contributed [sic] to their present emotional security.

■ This cause illustrates again the problems inherent in joint custody arrangements in divorce proceedings. *Lumbra* v. *Lumbra,* 136 Vt. 529, 531–33, 394 A.2d 1139, 1141–42 (1978). It is true that in the original proceedings here, joint custody was decreed as a result of an agreement between the parties. Courts are reminded however of the grave obligation placed upon them to resolve custody questions with the best interests and welfare of the children always in mind. This above all is the paramount concern. *Boone* v. *Boone,* 133 Vt. 170, 174, 333 A.2d 98, 101 (1975). Agreements between the litigating parties in divorce actions are not conclusive or binding upon the courts where the interests of the children are concerned. *Frink* v. *Frink,* 128 Vt. 531, 533, 266 A.2d 820, 822 (1970); *Martin* v. *Martin,* 127 Vt. 313, 314, 248 A.2d 723, 724 (1968). Joint custody, more often than not, creates more problems than it resolves regardless of the initial good intentions of the parties. It should be decreed only where there is a finding of extraordinary circumstances; rarely is it in the best interests of the innocent victims of divorce, the children. *Lumbra* v. *Lumbra, supra.* The same inability of the parties to resolve their own domestic difficulties between themselves "also indicates that the possibility of a cooperative custody solution is usually remote." *Berlin* v. *Berlin,* 139 Vt. 339, 340, 428 A.2d 1113, 1114 (1981).

It is understandably an emotionally scarifying circumstance evocative of sympathy when a presumably devoted and competent parent, either father or mother, must be denied custody of a beloved child or children, and rare indeed in all probability are parents who will acknowledge, even in their own minds, that the welfare of the child will be best served if custody is elsewhere. Nevertheless that is the inevitable consequence which follows when parents are unable or unwilling to resolve marital differences between themselves and turn to the courts for relief. They must be prepared to accept the decision of the court, if properly arrived at, as to the dissolution of the marriage itself, the division of property, custody, visitation rights and support payments when children

are involved, alimony, and other concerns over which the court has jurisdiction.

■■ In the matter before us the findings of the lower court were not seriously challenged; they were, in fact, conceded to be accurate by counsel for the defendant during oral argument. Moreover, a review of the transcript discloses that the findings were amply supported by credible evidence; accordingly they must stand. *Brown* v. *Town of Windsor*, 139 Vt. 129, 130, 422 A.2d 1268, 1269 (1980). The thrust of defendant's brief and argument seems to be that the court should have reached a different conclusion from the facts found, not that the findings themselves were improper. This argument is unavailing:

> In cases of this nature, the court is called upon to exercise its sound judgment and discretion. Regardless of what this Court or some other court might have done in the circumstances, the record does not show that the discretion of the lower court was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable, which is the recognized test in this state.

*Nichols* v. *Nichols*, 134 Vt. 316, 317–18, 360 A.2d 85, 86 (1976).

■ We are unable to find that the court either withheld or abused its discretion; accordingly the order modifying custody must stand. *LaFarr* v. *LaFarr*, 132 Vt. 191, 193, 315 A.2d 235, 236 (1974).

Notwithstanding our disposition of this matter, comment on the conduct of plaintiff in resorting to self-help and forceably removing the children from defendant's New York apartment is appropriate lest this opinion be interpreted as condoning that action; that is not the case. On the other hand, we agree with the lower court in its conclusion of culpability in the conduct of both parties. Although the original court order established the time periods for custody, the parties thereafter agreed, presumably in good faith, to a different arrangement under which custody for the two years subsequent thereto was to be with the plaintiff. Defendant arbitrarily breached that agreement by deciding she would not return

the children after the Christmas holiday which they had spent with her.

[7] We are not called upon to determine here the rights of the parties to change the terms of the order by a mutual agreement between them, on a contract basis or otherwise, see *Hess* v. *Hess*, 139 Vt. 336, 338, 428 A.2d 1114, 1116 (1981), nor the rights of one party, arbitrarily and unilaterally, to rely upon the order notwithstanding the subsequent agreement. It is sufficient for purposes of this case to point out that plaintiff's act did not *necessarily* bear on the underlying question: the welfare of the children. In view of the lower court's disposition of that question, we hold there was no abuse of discretion in declining to adjudicate the issue of contempt.

Other issues raised by defendant, including certain conduct of the attorney for the children, the exclusion of testimony relating to the children's preference, and the alleged present and past life-style of the plaintiff, were all resolved within the scope of the court's discretion without reversible error.

*Judgment affirmed.*