## Alice M. Ohland v. Henry N. Ohland

[442 A.2d 1306]

No. 340-80

Present: Barney, C.J., Billings, Hill and Peck, JJ., and Shangraw, C.J., (Ret.), Specially Assigned

Opinion Filed February 4, 1982

*George K. Belcher* of *Abare, Donaghy & Nicholls, P.C.,* Barre, for Plaintiff.

*Bentley & Biggam,* Montpelier, and *Francis A. Barber,* Melville, New York, for Defendant.

**Peck, J.** Plaintiff and defendant, the parents of three minor children, were divorced by an order of the Washington Superior Court dated December 26, 1978. Custody of the two older children, a boy and a girl, at the time twelve and ten years of age respectively, was awarded to the defendant. For reasons which apparently satisfied the court, but nevertheless effectively divided the children as a family unit, plaintiff received custody of the third child, a three year old boy. Included in the order were provisions forbidding defendant to remove the youngest child from the state in which plaintiff might be living at any given time, and directing him to pay to plaintiff $25 weekly for child support.

In open defiance of the court's order, defendant not only failed to make any child support payments, he removed the youngest child from Vermont where plaintiff continued her residence, and as far as she could discover he vanished totally with all three children from New York, where he had moved and obtained employment after the divorce. The court found that for a period of five months, from April 19, 1979, until September 19, 1979, plaintiff did not know where her children were or the defendant was located. Thus she was deprived of custody of the youngest child, support payments, and her rights of visitation with her other children.

Defendant finally emerged from the shadows in Jackson, Mississippi, when he instituted an action there through which he sought to gain custody of the youngest child. Plaintiff traveled to Mississippi and opposed the relief requested by defendant. The change of custody was denied by the Mississippi court, and plaintiff was permitted to return to Vermont with the child.

Having failed in his effort to obtain custody in Mississippi, defendant came to Vermont and filed a motion for modification of the original order, again seeking custody of the youngest child. The motion was heard on May 29, 1980, together with motions filed by the plaintiff: to modify and enforce the judgment order, a petition for contempt, and a motion to be awarded costs and expenses and for enforcement of judgment.

The court made its findings of fact and conclusions of law. The order based thereon adjudged defendant in contempt for failure to pay child support, and provided he might purge himself by paying the arrearage of $1600 plus any additional arrearage accumulated since the date of the hearing.

The right of defendant to visit the youngest child was modified by the order in several respects. Most importantly for purposes of this appeal, it requires him to deliver to the plaintiff at least one of the two older children in his custody, for simultaneous visitation with plaintiff, as a precondition to the exercise of his own visitation rights. Secondly, the order directs defendant to file a $2500 cash bond with the clerk of the court by 3:30 p.m. on the Friday before his visitations, to serve as liquidated damages should he fail to return the child to the plaintiff in accordance with terms of the order. As in the original order, defendant was again prohibited from

removing the child from the State of Vermont, with his visitation rights to terminate completely upon a showing that the prohibition has been violated.

Both parties were enjoined by the order to keep the other informed of where they could be located while exercising their visitation rights. All other motions were denied, including defendant's for a change of custody, and plaintiff's for reimbursement of the travel and legal expenses she had incurred in locating and retrieving the youngest child, and for debts and other amounts claimed as due to her from the defendant. Both parties appealed from the order.

Defendant presents us with four issues. He claims first that the court erred in concluding he had failed to sustain his burden to demonstrate a substantial change in circumstances sufficient to justify a modification of the original custody order.

It is a well established rubric, at least in this state, that a change in circumstances is no more than a jurisdictional threshold which must be crossed before a modification of custody, alimony, and support orders can be considered. *Grant* v. *Grant*, 136 Vt. 9, 12, 383 A.2d 627, 629 (1978). In other words, change of circumstances alone is not a ground for the modification of a custody order, it is a prerequisite. *Gokey* v. *Gokey*, 127 Vt. 334, 335, 248 A.2d 738, 739 (1968).

The evidence purporting to show a change in circumstances breaks down into two categories. Relating to defendant, he is now remarried and has an opportunity for employment in New York State. He argues, in effect, that he can better provide a stable home environment for the youngest child. On the other hand, the evidence indicates the plaintiff had something of a roving eye and engaged in sexual relations with several men, while the child was in the apartment. The court found, however, that the youngster was not aware of these activities, being asleep in another room at the time. One of the plaintiff's partners in these episodes was a relatively young man in his late teens, some fourteen years her junior, with whom she had carried on a similar liaison prior to the divorce. This relationship, she claimed during the original proceedings, had terminated and would not be resumed. Finally, the plaintiff admitted she had smoked marijuana on occasion. However, the

evidence is vague at best as to the point in time when she had indulged in this illegal pastime, and she had never done so in the presence of her children.

The findings and conclusions are fully supported by evidence of the defendant's misconduct, his present situation, and the plaintiff's conduct. That being so, and the facts are not seriously disputed by either party, defendant's quarrel, as is so often the case, is not with the facts, but with the conclusions, that is, the results the court has formulated from those facts. But this is a matter of judgment and discretion.

■■ It is probably demonstrable that what one judge may do in exercising his discretion in a given situation, another would have done quite differently. But this is not the test. We have pointed out on several occasions that where a matter of judicial discretion is involved, a ruling of the trial court will not be set aside because another court, or even this Court, might have reached a different conclusion. E.g., *Nichols* v. *Nichols*, 134 Vt. 316, 317–18, 360 A.2d 85, 86 (1976). The true test in reviewing these matters is whether there has been an abuse of discretion, or a failure to exercise discretion. *Senesac* v. *Senesac*, 135 Vt. 24, 25, 370 A.2d 214, 215 (1976). The burden of demonstrating abuse or failure to exercise discretion is upon the party asserting it. *Kissell* v. *Kissell*, 131 Vt. 77, 81, 300 A.2d 551, 553 (1973).

■ In the case before us now, neither party may be blameless. But given defendant's open defiance of the original order in virtually all of its major requirements as described above, coupled with the anguish the plaintiff must have experienced when, as a direct result of his conduct, she did not even know where her children were for five months, speaking nothing of the expenses he forced her to incur, he has not demonstrated change of circumstances, sufficient, in our judgment, to *require* the court to modify the order at this time, and award him custody of the youngest child.

■ The prime concern in custody cases is the welfare of the children. *Lumbra* v. *Lumbra*, 136 Vt. 529, 531, 394 A.2d 1139, 1141 (1978). The youngest minor in this case has been dealt with much as a shuttlecock in a game of badminton. The responsibility for this treatment lies primarily with the de-

fendant. The lower court may well have wondered if defendant's true concern was in fact for the child, rather than his own personal desires. We think the child is entitled at last to whatever stability the court, in its best, albeit human, judgment can provide him.

The alleged immoralities of the plaintiff may be appropriate for consideration, and while they may be sordid and not to be condoned, neither are they necessarily conclusive standing alone. *Palmer* v. *Palmer*, 138 Vt. 412, 415, 416 A.2d 143, 145 (1980).

■ In reaching its decision, we cannot say the court either abused, or failed to exercise, its discretion; the decision was, perhaps, not an easy one, with culpable conduct on both sides. The record indicates that careful consideration and analysis were accorded all aspects of the situation as they existed on the date of the hearing. Accordingly, the court's decision allowing the status quo to remain, as far as custody is concerned, was neither unreasonable or untenable, and we affirm.

■ Defendant next challenges that part of the court's order which requires him to deliver one of the two older children to the plaintiff for "simultaneous visitation" prior to his own visitations with the youngest child.

This is indeed an unusual requirement. The defendant argues that, in effect, it makes one of the older children a "hostage" for his (defendant's) good conduct. Considered literally he may be right, and there may be some doubt that it is in the best interests of the child selected for the role. The concern must be the welfare of all three children, not just one. Nevertheless, it is the past conduct of the defendant, the demonstration by him of his complete disregard for the order of the court which gave rise to this requirement, as well as to the requirement that he post a $2500 cash bond prior to visiting the youngest child, a requirement he also claims as error. We think that if the defendant will but handle the "simultaneous visitation" with the good faith he says he is now prepared to demonstrate, there is no reason why the older child selected should be adversely affected. The decision falls within the broad scope of the court's discretion; accordingly we will let it stand. *Palmer* v. *Palmer, supra.*

In the same manner we find no abuse of discretion in the requirement that defendant post a cash bond. The record indicates that he can now obtain reasonably gainful employment, and again, it is obvious that he has only himself to blame; his record for a complete disregard for the law and for the court having jurisdiction, justifies that court in its apprehension that, at least until experience and time demonstrate otherwise, he may again take the law into his own hands in seeking to achieve his own ends. There is little to persuade us at this point that he is not entirely capable of doing so. No error appears.

        Finally, we have no hesitation in affirming the court's finding that defendant was in contempt for failing to make the required support payments. It is true that "the inability *without fault* to obey an order of court is a valid defense to a charge of contempt." *Spabile* v. *Hunt,* 134 Vt. 332, 334–35, 360 A.2d 51, 52 (1976) (emphasis added). The burden of proving inability lies with the contemnor. *Id.; Orr* v. *Orr,* 122 Vt. 470, 474, 177 A.2d 233, 235 (1962). If defendant was financially unable to make the payments, as he claims, it was an inability of his own creation. He abandoned gainful employment to travel about in the South, taking with him, unlawfully, the youngest child, as well as the two older children, working at odd jobs at varying salaries and in various locations, while seeking some means to get custody of the child illegally held by him. Speaking strictly, defendant may not have reduced his income voluntarily in order to avoid making support payments, but that was the practical effect of his actions nevertheless. It cannot be condoned. See *Miller* v. *Miller,* 124 Vt. 76, 81, 197 A.2d 488, 492 (1963). He cannot gain such an unconscionable advantage through his own misconduct. The requirement is without error.

Turning to the plaintiff's appeal from the denial of her request that defendant be ordered to reimburse her for various costs and expenses incurred by her subsequent to the divorce, the court concluded that, except for child support, he did not have the financial ability to do so. The conclusion is couched in the following words:

> The defendant does not have the financial ability to pay *at this time* the expenses, other than child support, set

forth in Plaintiff's exhibit 1. Therefore, the Court, in its discretion, will not require Defendant to pay these items *now*. (Emphasis added.)

The expenses referred to are not not in the same class of ongoing payments, such as child support and alimony, which typically survive the final decree in a divorce proceeding, and are always subject to modification if and when a change of circumstances occurs even though, as this Court has held, a debtor-creditor relationship is created. *Lowell* v. *Lowell*, 138 Vt. 514, 515, 419 A.2d 321, 322 (1980). They are, rather, analogous to damages claimed in tort or quasi-contract. In such proceedings, the financial inability of a defendant to respond, though the party may be "judgment proof," does not preclude the entry of judgment against him; a defendant's financial situation is not relevant. In the former case, the divorce proceeding, the court must always inquire into ability to pay, see *Colm* v. *Colm*, 137 Vt. 487, 492, 407 A.2d 184, 187 (1979) ; the contrary is true in the more usual civil action for damages, where, as indicated, it is not an issue in the litigation.

The language employed in the conclusion quoted above is ambiguous and confusing; in fact, defendant argues it constitutes a final adjudication that his "present" inability is, in effect, res judicata for all time. On the other hand, the italicized words particularly can surely be interpreted to mean that defendant is liable for the costs and expenses in accordance with the findings, but that like alimony and child support, the extent of the obligation is dependent upon ability to pay at any given time, and accordingly the issue remains subject to be reopened in the future. Thus, the trial court did not see fit, at least with any clarity, to direct reimbursement over a period of time as it might have done had it intended the possibility of eventual recovery to remain open. See *Harrigan* v. *Harrigan*, 135 Vt. 249, 251, 373 A.2d 550, 552 (1977). Instead it left the parties to fend with the puzzling conclusion cited.

We might let the conclusion and denial order stand on the grounds that it is justified on the basis of plaintiff's moral conduct. That would not solve the problem inherent in the

conclusion as worded. Future litigation, based on conflicting interpretations of the language used, seems inevitable and is to be avoided if possible.

In the light of this opinion, we affirm the decision below as to the appeal of the defendant on all issues, but remand for clarification by the court of its intent as to the finality of its denial of plaintiff's motion for costs and expenses.

*Affirmed as to all issues raised by defendant's appeal; remanded for clarification of the court's order denying plaintiff's motion for costs and expenses in accordance with this opinion.*