## Elise Price v. Stephen Price

[541 A.2d 79]

No. 86-122

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed December 24, 1987

*Edwin H. Amidon, Jr., and Heather R. Wishik* of *Langrock Sperry Parker & Wool,* Burlington, for Plaintiff-Appellant.

*Valerie White,* Morrisville, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Elise Price, appeals from an order of the superior court granting custody of the minor daughter of the parties to appellee, Stephen Price. Both parties sought a divorce in the superior court and contested the disposition of the property of the marriage, child support, custody and visitation. Only the court's order with respect to custody has been appealed. However,

as noted below, the appeal necessarily involves the orders of the court with respect to visitation and child support.

The parties lived together until January of 1985, when plaintiff went for a visit to her parents' house in Connecticut, taking her two-year-old daughter with her. During this visit, plaintiff decided not to return to Vermont. Thereafter, attempts at reconciliation failed. The conflict between the parties grew as they were unable to work out the details of their separation, particularly with respect to custody and visitation. Plaintiff would allow the defendant to visit their daughter only at her parents' house in Connecticut and only when she or her parents were present.

Plaintiff filed for divorce in April seeking custody of the minor child. Defendant cross-filed for divorce, also seeking custody. A temporary custody and visitation order was entered in July awarding temporary custody to plaintiff, with visitation set forth for defendant on a month by month basis. The temporary order was constructed to allow limited visitation contact in the beginning leading up to a more general visitation scheme to allow defendant to take the child every other weekend.

The custody and visitation scheme continued to create conflicts. Defendant's job as a hotel manager made it difficult for him to make long-term commitments, or exercise visitation rights on a particular day. Plaintiff expressed frustration over deviations from the agreed upon schedule and, in general, would not agree to such deviations. As a result, defendant had less time with the minor child than originally contemplated.

The hearing on the merits was relatively brief in view of the issues separating the parties. Plaintiff's testimony centered on the reasons why she should be the primary custodian for the child. She also testified that defendant lacked judgment in caring for the child and that, as a result, she had been forced to restrict visitation. She detailed her frustrations about defendant's inability or unwillingness to visit the child as the order allowed.

Defendant's testimony covered why he would be a proper custodian of the child. He emphasized what he believed to be unreasonable conduct of the plaintiff in withholding unrestricted visitation. He explained how plaintiff's requirement of a very specific long-term visitation plan was inconsistent with his work responsibilities and made it impossible for him to engage in visitation.

The trial court awarded custody to defendant, concluding that this award was in the child's best interest. While the award is

based on some forty findings, the major emphasis of the court's discussion appears to be the issue of visitation rights. The court concluded that the plaintiff had intentionally left the State of Vermont to frustrate any court order on visitation and custody. It further found that plaintiff had deliberately attempted to prevent visitation and that she would continue to prohibit visitation despite a court order. Thus, the trial court found that custody in defendant would provide "the best opportunity for fruitful and positive relation with both parents."

Plaintiff appeals from the order with respect to custody on five grounds: (1) the trial court erred in basing its custody award on plaintiff's decision to end the marriage; (2) the trial court erred in basing its custody award on difficulties with visitation without finding that the difficulties impacted on the child's best interests; (3) the trial court failed to make findings on the best interests of the child generally and failed to make them on the specific factors listed in 15 V.S.A. § 652; (4) the findings and conclusions of the court are unsupported by the evidence; and (5) the trial court erred in failing to make findings on issues raised by plaintiff's requests for findings. We reverse and remand.

At the time of the trial court's decision in this case, the standards for determining custody were set forth in 15 V.S.A. § 652.[1] This statute required that the court "be guided by the best interest of the child." It was a codification of the preexisting standard adopted by this Court over many years. See, e.g., *Jensen* v. *Jensen*, 141 Vt. 580, 581, 450 A.2d 1155, 1155 (1982); *Ohland* v. *Ohland*, 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982); *Korshak* v. *Korshak*, 140 Vt. 547, 550, 442 A.2d 464, 466 (1982); *Cameron* v. *Cameron*, 137 Vt. 12, 14, 398 A.2d 294, 295 (1979); *Lumbra* v. *Lumbra*, 136 Vt. 529, 531, 394 A.2d 1139, 1141 (1978); *Senesac* v. *Senesac*, 135 Vt. 24, 25, 370 A.2d 214, 215 (1976).

The statute set forth four nonexclusive factors that may be considered by the court. § 652(a)(1)-(4). The court could, however, consider "all factors relevant to the best interests of the children." *Bonanno* v. *Bonanno*, 148 Vt. 248, 251, 531 A.2d 602, 604 (1987).

The trial court has wide discretion in evaluating the facts and circumstances bearing on the best interest of the child. We will

---

[1] Section 652 was repealed and replaced by 15 V.S.A. § 665 effective July 1, 1986. The findings in this case were issued in March of 1986.

not set aside a judgment solely because we would reach a different conclusion on the facts. *Ohland* v. *Ohland*, 141 Vt. at 39, 442 A.2d at 1309. Nor will we reverse unless the discretion is "erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." *Jensen* v. *Jensen*, 141 Vt. at 581-82, 450 A.2d at 1156 (citations omitted).

We have, however, required that the findings and conclusions state the findings critical to the disposition of the case and the basis of the decision. See *Mayer* v. *Mayer*, 144 Vt. 214, 216-17, 475 A.2d 238, 239-40 (1984). We will not speculate on the basis for the findings and conclusions. *Id.* at 216, 475 A.2d at 239-40. With these standards in mind, we review the decision of the trial court in light of the claims of the plaintiff.

Plaintiff's first claim is that the trial court based its custody conclusion in part upon its determination that plaintiff was at fault for the breakup of the marriage because she moved out of the home without a good explanation. The evidence in the case showed that the plaintiff decided to separate from defendant at least temporarily while on a visit to her parents' home in Connecticut. Attempts to reconcile failed and plaintiff has continued to reside at her parents' home with the expectation she will set up a permanent residence nearby.

Neither party raised the issue of fault for breaking up the marriage. The presiding judge attempted to establish it, however, by questions to each of the parties and found that "a . . . review of the evidence fails to demonstrate a single, credible reason justifying her leaving." Later findings and conclusions have direct or indirect allusions to the fault of the wife—for example, the court found that plaintiff had absconded with the child out of the jurisdiction.

The relative fault of the parties in terminating the marriage is not relevant to the determination of custody between them. The relevant cases and the statute as it then existed are clear that the determination must be made on the basis of the best interest of the child at the time of hearing. The purpose of custody award is not to "punish or reward one parent for real or supposed derelictions." *Curless* v. *Curless*, 708 P.2d 426, 430 (Wyo. 1985). See *Korshak* v. *Korshak*, 140 Vt. at 552, 442 A.2d at 467 (act of "child snatching" does not prevent custody award to parent who committed the act because it does not necessarily have bearing on the

welfare of the child). See also *J.B.* v. *A.B.*, 161 W. Va. 332, 345, 242 S.E.2d 248, 256 (1978) (child custody award should not be to punish the offending spouse because "one may also punish the innocent child").

■ Even if fault were relevant, the evidence and findings here do not support a conclusion that plaintiff was at fault. Under Vermont's no-fault divorce law, a divorce is available if the parties have lived apart for six consecutive months and the resumption of marital relations is not reasonably probable. 15 V.S.A. § 551(7). In *Emmons* v. *Emmons*, 141 Vt. 508, 450 A.2d 1113 (1982), this Court held that a finding of fault based on the sole fact that the spouse left the homestead "would substantially circumvent the no-fault divorce provision." *Id.* at 511, 450 A.2d at 1115. The Court was particularly concerned that neither spouse would be willing to leave the home, even after the marriage was irretrievably broken, for fear that it would be used against the spouse in dividing the marital property. The *Emmons* holding was recently reaffirmed in *Cleverly* v. *Cleverly*, 147 Vt. 154, 157, 513 A.2d 612, 614 (1986).

Plaintiff's actions in terminating the marriage in this case go no further than those in *Emmons* or *Cleverly*. Thus, her actions could not be considered as fault bearing on any of the issues in the case.

■ Defendant argues that the court's fault determination does not warrant reversal because it is not clear that the custody holding was based on the fault determination. We agree that although the court alluded to plaintiff's action in leaving the home in a number of findings and conclusions, it is not clear that the court determined custody on this basis. This is because the court did not clearly specify the facts it relied upon and the conclusions it drew in awarding custody beyond a general statement that the child's best interests lie with the father's custody. As we stated above, we will not be left in a position where we must speculate on the grounds for the decision. Since we are left to speculate on the effect of the fault determination, we must remand for further proceedings on this issue.

■ Plaintiff's remaining contentions all deal with the trial court's determination of the best interest of the child in the selection of a custodian, particularly as that determination related to difficulties of visitation. The plaintiff attacks the findings and conclusions as unsupported by the evidence, attacks the failure to

make findings on issues raised by her requests and asserts error in the failure to consider all factors bearing on the best interest of the child.

It is clear that the trial court gave great weight in its custody award to its conclusion that plaintiff had intentionally frustrated defendant's visitation. The court found that her action was "deliberate and calculated to specifically deny visitation" to defendant and "to frustrate any court order on visitation or custody."

The evidence showed continuing conflict over visitation. At first, plaintiff would allow defendant visitation only at her parents' house in her presence. In July, over six months after the parties separated, the parties worked out a visitation schedule which was embodied in a temporary order of the court. Conflict continued, however, because the schedule in the order was too rigid in view of the distance between the parties and defendant's irregular working hours. It is fair to say that plaintiff was not accommodating in working out alternatives when the rigid schedule could not be implemented. On the other hand, there is no finding that she ever violated the visitation order, and defendant never sought any enforcement or modification action. Thus, defendant was in the position of complaining of actions pursuant to a visitation order that he had agreed to.

Both parties introduced evidence bearing on a range of factors related to the best interest of the child. Plaintiff requested findings pursuant to V.R.C.P. 52(a) and submitted proposed findings on all the factors contained in § 652(a) and others. The trial court did not rule on the requests to find and made no findings on most of the factors listed in § 652(a) and covered in plaintiff's requests.

The trial court's actions involved error in a number of respects. The trial court must make the "critical findings" in the case—that is, the "facts essential to the disposition of the case must be stated." *Mayer* v. *Mayer,* 144 Vt. at 217, 475 A.2d at 240. For purposes of a contested custody case, we believe that the facts essential to the disposition of the case must include those relating to the court's conclusions and those relating to factors bearing on the best interest of the child raised by the parties. Where, as here, the parties submitted evidence bearing on the present and proposed interaction of the child with each parent (15 V.S.A. § 652(a)(2)); the child's adjustment to home, school and community and the likely effect of change (15 V.S.A. § 652(a)(3)); and the mental and physical health of the child and

any impact of change of custodian on it (15 V.S.A. § 652(a)(4)); as well as other factors, the court was required to make findings and conclusions on these issues. Beyond a bare assertion that the wife "has demonstrated an inability to properly provide for the care of the child," without explanation, there are no such findings or conclusions here.

■ Further, the court's emphasis of the visitation difficulties showed that it exercised its discretion on "unfounded considerations" and in a manner "clearly unreasonable" under the circumstances. See *Jensen* v. *Jensen*, 141 Vt. at 582, 450 A.2d at 1156. The court made no finding that the plaintiff had violated any outstanding visitation order. Clearly, the visitation difficulties could be ameliorated, if not cured, by a more flexible visitation order that gave defendant greater visitation opportunities consistent with his schedule. If plaintiff violated that order, there may be grounds for modification of the custody decree if it is in the best interest of the child.[2] See *Egle* v. *Egle*, 715 F.2d 999 (5th Cir. 1983), *cert. denied*, 469 U.S. 1032 (1984); *In re Gonzales*, 373 N.W.2d 152, 154 (Iowa Ct. App. 1985); *K.R.(S).D.* v. *C.D.S.*, 646 S.W.2d 428, 431 (Mo. App. 1983).

Although the conclusions generally stated that the plaintiff conduct on visitation was "clearly detrimental to the child's need for parental contact" and this was not in the best interest of the child, there were no specific findings on the effect of the visitation difficulties on the child. There is no doubt that a supportive and close relationship with the noncustodial parent is in the best interest of the child. Our statute now specifically itemizes this factor. See 15 V.S.A. § 665(b)(5). It is important, however, to weigh this factor along with all others bearing on the best interest of the child and not give undue weight to any one factor unless the evidence clearly discloses that weight. To the extent the decision making process is disclosed by the findings and conclusions of the trial court, there is no indication that the court weighed all the factors or, in fact, any factor other than the visitation difficulties.

---

[2] We do not suggest that visitation frustration alone is automatically grounds for custody modification. Rather, such conduct can constitute a "change of circumstances" under 15 V.S.A. § 652(d) (now § 668) that can allow consideration of modification of custody. Once the threshold is met, the court can change custody only if it finds such change is in the best interest of the child. See *Hayes v. Hayes*, 144 Vt. 332, 335, 476 A.2d 135, 138 (1984).

A weighing from the child's perspective is particularly important for this kind of factor. As one commentator has noted:

> Another dispositional matter often used for similar covert purposes is the question of visitation rights. The bloody fight over the rights of parents versus the needs of the children may be focused on this issue. It is an ideal place to reincarnate the punitive attitudes of one parent or the other, or to re-mobilize moralizing in relation to past behavior.

Watson, *The Children of Armageddon: Problems of Custody Following Divorce*, 21 Syracuse L. Rev. 55, 59 (1969). In examining the best interest of the child, the court can not be governed by the "opposing desires of hostile parents." *Cameron* v. *Cameron*, 137 Vt. at 14, 398 A.2d at 295. Because the parents are the parties before the court, it is easy to become caught up in their rights and interests rather than the child's welfare. See *Jasper* v. *Jasper*, 351 N.W.2d 114, 117 (S.D. 1984) (custody determination reversed because the "trial court apparently gave greater consideration to allowing the parents the opportunity to influence their children than to the children's best interests . . . .").

We have condemned a situation where we found that the child "has been dealt with much as a shuttlecock in a game of badminton." *Ohland* v. *Ohland*, 141 Vt. at 39, 442 A.2d at 1309. It is possible for angry parents to see the custody determination as a trial of the merits of their interaction with each other and, as a result, to treat the child as a "shuttlecock" in that battle. This was a case in which much of the evidence went to the reasonableness of the conduct of each spouse in relation to the other. It is critical that, throughout the proceeding, the trial court maintain a perspective which focuses on the best interests of the child. We can not say that was done here.

The visitation and support orders in this case are linked to the custody determination. Because the custody determination must be reversed, these parts of the order must also be vacated.

*The judgment of the superior court with respect to custody and visitation of the minor child of the parties and with respect to child support is reversed and remanded for proceedings consistent with this opinion.*