**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-024



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2025

Patrick Maher\* v. Stacy Maher

}    APPEALED FROM:
}    Superior Court, Rutland Unit,
}    Family Division
}    CASE NO. 23-DM-00808
     Trial Judge: Susan A. McManus

In the above-entitled cause, the Clerk will enter:

Father appeals the trial court's award of sole legal and physical parental rights and responsibilities to mother.  We affirm.

Following a three-day hearing, the trial court issued an order containing the following findings and conclusions.\*  The parties were married in 2017 in Alaska and are the parents of two minor children, who are seven and six years old.  Mother was born and raised in Ohio, and father is from Vermont.  The parties met in 2016 through their work for General Electric in Rutland.  Mother became pregnant in 2017 and the parties married in March of that year.  In 2018, the parties moved to Alaska, where both had been offered positions with the Army Corps of Engineers.  Their second child was born in 2019.

While the parties lived in Alaska, mother took care of the household, including scheduling and attending the children's medical appointments, researching their developmental milestones, and tending to the children's daily needs.  Father supported mother with childcare when he was able and managed the family finances.  When the COVID pandemic began in 2020, father was in a management role and mother had a lower-level job.  Because father had more meetings and responsibilities, mother assumed a greater proportion of the child-rearing responsibilities while continuing to work.

After two years, the parties decided to move back to Vermont, where they had support from father's extended family.  Father took a job with a construction firm, which required him to leave the home around 5:30 a.m.  Mother continued to work remotely for the Army Corps of

---

\*  Mother moved to strike portions of father's brief and printed case, asserting that they included materials that were not submitted to the trial court.  V.R.A.P. 10(a).  Because we did not need to consider any of these materials to reach our decision, we dismiss the motion as moot.  Chase v. Bowen, 2008 VT 12, ¶ 13 n.2, 183 Vt. 187.

Engineers. She was the primary caregiver for the children. The parties also hired nannies to assist with childcare needs. Mother developed a homeschool curriculum for the children to follow and kept them on a rigid schedule. Father assisted with making dinner and with the children's bedtime routine and spent outdoors time with them. The children were close to father's family, including his parents and brother. Mother was uncomfortable having the children around father's family because she felt they did not provide the children with healthy food. She also felt father's brother was a negative influence on father. Around this time, the parties' careers began to cause strain in their marriage. They unsuccessfully attempted marital counseling in the fall of 2022.

Father is a member of the National Guard. In October 2022, the Army registered father for coursework necessary for him to be promoted to Lieutenant Colonel. The program required 125 hours of coursework and over twenty exams. At the same time, the children's nanny became unable to work due to knee trouble. Mother struggled to find replacement childcare options. The parties agreed that she would temporarily take the children to Ohio, where she had support from her mother and sister, while father completed his coursework.

Mother returned to Vermont in January 2023. The parties' marital difficulties continued, and mother took frequent trips with the children to Ohio. Father did not come with her and was uncomfortable with her making the long trips with the children.

In April 2023, after a particularly contentious day, mother packed her and the children's things and returned to Ohio with the intention of staying there permanently. Mother did not tell father that she was leaving. Mother claimed that father's erratic driving the previous day had caused her to fear for her safety. The court declined to make any findings about the events of that day. After mother left, father filed for divorce.

The court issued a temporary order awarding sole parental rights and responsibilities to mother. Mother enrolled the parties' older child at a prestigious private school in Kentucky, approximately forty-five minutes from her residence in Ohio. The children were involved in many activities in Ohio and had friends there. They had strong relationships with mother's family. Because mother worked remotely, she was able to schedule her work responsibilities around the children's schedules.

Father attempted to have daily contact with the children by telephone or FaceTime when they were in Ohio. Mother or the children's maternal grandmother monitored these conversations. The children frequently missed father's calls due to their activities and would not respond until the following day. When father traveled to Ohio, mother refused to let the children stay with him in his hotel, claiming that it interfered with their routine. The parties' custody exchanges generally went well, except for one exchange in December 2023 when they had an argument that became physical in front of the children. The court found that neither party behaved responsibly during this incident.

The court assessed the best-interests factors set forth in 15 V.S.A. § 665(b). It found that parents were equally situated with regard to most of the factors. It found that father was better able and disposed to foster a positive relationship between the children and mother. However, it found that the children were strongly connected to their Ohio community, where they had lived full time since April 2023. They had a close relationship with mother's extended family and were enrolled in school in the area. Although the children were close to father's family, they had never attended school in Vermont and it was unclear what other community connections they had to Vermont. Requiring them to move to Vermont would cause upheaval in their lives. The court further found that mother had been the primary caregiver for the children throughout their

lives, while father's caretaking role fluctuated. Due to the nature of her work, she was able to continue to be their primary caregiver. The court found that these factors weighed in favor of mother. The court therefore awarded her sole legal and physical rights and responsibilities, with father to have parent-child contact during the summers, certain school holidays, and three-day weekends.

On appeal, father argues that the court abused its discretion by failing to make certain factual findings and that other findings were clearly erroneous. He claims that the court abused its discretion by requiring him to remain in Ohio when visiting the children for their three-day weekends. Finally, he claims that the court improperly assessed the best-interests factors.

"The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Myott v. Myott, 149 Vt. 573, 578 (1988) (quotation omitted). "We will uphold factual findings if supported by credible evidence, and the court's conclusions will stand if the factual findings support them." Spaulding v. Butler, 172 Vt. 467, 475 (2001) (quotation omitted).

We begin by addressing father's arguments regarding the adequacy of the court's findings. "A trial court must make findings of fact upon all material issues raised by the pleadings and evidence." Roy's Orthopedic, Inc. v. Lavigne, 142 Vt. 347, 351 (1982). "On review, the trial court's findings will be deemed insufficient when we are left to speculate as to the basis of the trial court's decision." Bonanno v. Bonanno, 148 Vt. 248, 251 (1987). As discussed below, we are not left in such a position in this case.

Father first claims that the court improperly failed to resolve conflicting evidence regarding mother's allegations that father tailgated her the day before she left permanently for Ohio. He contends that his evidence demonstrated that her story was false and part of a strategy to gain custody by absconding with the children. The trial court declined to make findings regarding this incident, and did not rely on it in assessing the best interests of the children. From the original order and the court's decision on father's motion for reconsideration, it is evident that the court did not view the precise reason for mother's departure as material, given its findings that the parties had been experiencing marital difficulties for some time and that mother had been spending increasing time in Ohio. The court expressly rejected father's claim that mother's move to Ohio was a gambit designed to ensure she would become the de facto primary caregiver, because she already was the primary caregiver. The court's reasoning is clear and we therefore see no abuse of discretion in its decision not to make findings on the alleged tailgating incident. Rossetti v. Chittenden Cnty. Transp. Auth., 165 Vt. 61, 69 (1996) (explaining court is not required to "specifically address each item of evidence and state why it accepted or rejected it in fashioning its findings of fact").

Father further argues that the court erred by failing to find that mother was not credible in her testimony that, prior to leaving, she felt she had to communicate daily with her family because she felt unsafe around father. The court did not rely on mother's testimony about her communications to family, and father has not demonstrated how this evidence is relevant to the custody decision. We will not reweigh the evidence or make credibility determinations on appeal. See Knutsen v. Cegalis, 2011 VT 128, ¶ 13, 191 Vt. 546 (mem.) ("That a different weight or conclusion could be drawn from the same evidence may be grist for disagreement, but does not show an abuse of discretion."). Similarly, the conflicting evidence about whether father had affairs during the marriage is not relevant to the custody decision, and the court did not err in declining to make findings on that issue. See Price v. Price, 149 Vt. 118, 121 (1987) ("The

3

relative fault of the parties in terminating the marriage is not relevant to the determination of custody between them.").

Father further challenges the court's finding regarding the December 2023 custody exchange as clearly erroneous because it failed to find that mother lied when she testified that father grabbed and twisted her arm. We see no error. The evidence supports the court's finding that during that exchange, the "parties engaged in a disagreement which turned physical," and "[n]either of the parties acted responsibly during this exchange." Contrary to father's argument, the videorecording of this incident that was introduced at trial does not so clearly disprove mother's version of events that the trial court was required to find that she was lying. See In re M.K., 2015 VT 8, ¶ 15 n.*, 198 Vt. 233 (explaining that when evidence submitted at trial includes video this Court will watch video, but Court continues to review findings of fact for clear error). The court's finding is therefore not clearly erroneous.

Finally, father argues he presented evidence that mother locked the children in their bedrooms at night and the court abused its discretion in failing to make any findings on this issue because it was relevant to whether there was evidence of abuse. However, father took the position below that there was no evidence of abuse in this case. He does not explain how this evidence is relevant to any other factor. Accordingly, he has failed to demonstrate that the court abused its discretion in declining to give it weight. Knutsen, 2011 VT 128, ¶ 13.

Next, father contends that the court abused its discretion in requiring him to remain in Ohio when visiting the children during their three-day weekends. The parent-child contact section of the court's order provided that for any three-day weekends the children had during the school year, father could travel to Ohio and have contact with the children, including overnights at his accommodations in Ohio. After the order issued, father took the position that it allowed him to take the children back to Vermont during their three-day weekends, leading mother to move for clarification. The court subsequently issued an order clarifying that it intended for father's three-day-weekend visits to occur in Ohio. It ordered that "[f]ather may travel to Ohio and have contact with the children, in Ohio, starting from school dismissal until 5 pm the evening before school resumes, or as the parties otherwise agree."

The trial court has broad discretion in determining parent-child contact and "[w]e will uphold [its] award if it shows reasoned judgment in light of the record evidence." Lee v. Ogilbee, 2018 VT 96, ¶ 11, 208 Vt. 400 (quotation omitted). Father argues that the court's order was an abuse of discretion because it allowed mother to set the terms of his contact, in violation of the rule that "[p]arents generally cannot place limits or exercise control over each other's parenting time, even if one has primary responsibility for the child." Barrows v. Easton, 2020 VT 2, ¶ 14, 211 Vt. 354. We disagree. As father acknowledges, the trial court has discretion to place reasonable limits on parent-child contact. Palmer v. Palmer, 138 Vt. 412, 415 (1980). The court found that it takes approximately twelve hours to drive between father and mother's residences. Its decision to require three-day-weekend visits to take place in Ohio was plainly designed to avoid having the children spend most of their long weekends in a car. The order did not improperly allow mother to exercise control over father's time with the children.

We are also unpersuaded by father's argument that the order rendered compliance an impossibility because he could not pick up the children from their school in Kentucky without violating it. Father's "argument borders on specious, and requires such a narrow reading of the decree as to defeat its clear intent." See id. (rejecting parent's overly literal interpretation of parent-child contact order). The court clearly intended that father pick up the children, take them back to Ohio, and spend weekends with them there. It did not abuse its discretion in imposing this requirement.

Finally, father argues that the court improperly weighed the statutory best-interests factors in deciding how to award custody. As with parent-child contact, the trial court has broad discretion in assigning parental rights and responsibilities. Begins v. Begins, 168 Vt. 298, 301 (1998). We "will not disturb the court's custody award if it reflects reasoned judgment in light of the record evidence." DeLeonardis v. Page, 2010 VT 52, ¶ 20, 188 Vt. 94 (quotation omitted). "A trial court does not need to make specifically enumerated findings regarding each of the governing statutory factors in 15 V.S.A. § 665 so long as the record as a whole indicates they were all considered." Thompson v. Pafundi, 2010 VT 80, ¶ 12, 188 Vt. 605 (mem.).

Father claims that the court gave too little weight to "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent," 15 V.S.A. § 665(b)(5), and too much weight to mother's role as primary caregiver, id. § 665(b)(6). His argument lacks merit. "The ability to foster a positive relationship is a critical factor in determining a child's best interests, but unlike the primary caregiver relationship, we have not elevated it above other factors." Hazlett v. Toomin, 2011 VT 73, ¶ 13, 190 Vt. 563 (mem.). In Begins, the case relied upon by father, we reversed the trial court's award of custody to the father because it was based on his "willful alienation of a child from the other parent," which caused the children's hostility toward the mother. 168 Vt. at 302. In this case, mother may have engaged in some overly controlling behavior by monitoring the children's calls and refusing to let them spend overnights with father in Ohio, but the court did not find that mother tried to alienate the children from father or that her behavior had actually undermined their relationship with him. This case is therefore a far cry from Begins.

We are likewise unpersuaded by father's attempt to analogize this case to Illsley v. Fickert, No. 23-AP-352, 2024 WL 2131663 (Vt. May 10, 2024) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo23-352.pdf. There, the court found that the father had shared equally in caring for the children until the mother falsely reported to police that he had abused her and obtained a relief-from-abuse order, then secretly relocated with the children to Illinois to live with her new boyfriend. She then prevented him from contacting the children despite a court order allowing him to do so. We held that the court's award of custody "essentially condone[d] [the] mother's attempt to become the de facto primary care provider by moving far away from [the] father and interfering with the children's relationship with him," and could not be upheld. Id. at *4.

The facts of this case differ significantly from Illsley. The trial court specifically found that mother had been the children's primary caregiver throughout their lives; thus, her move to Ohio was not a strategy designed to displace father as the primary caregiver, because he never played that role. The trial court also found that mother's move to Ohio was not a surprise or made under false pretenses because the parties had been experiencing marital difficulties and mother had already been spending significant time with the children in Ohio, where she had longstanding connections, with father's knowledge. While mother did not inform father before her final departure, she did not falsely report abuse to the authorities to make herself the de facto custodian or prevent him from contacting the children. And, while mother monitored father's conversations with the children and refused to allow him overnights, she did not attempt to cut him out of their lives completely, and there is no evidence that she violated any court order.

Finally, father argues that the court erred in failing to consider the ninth statutory factor, evidence of abuse. As noted above, father asserted in his proposed findings of fact and conclusions of law that "[t]he final factor, evidence of abuse, does not apply in this case." Father has therefore failed to preserve this argument for our review. See State v. Morse, 2019 VT 58, ¶ 7, 211 Vt. 130 (explaining that where party deliberately considers issue and intentionally decides to forego it, party is barred from raising that issue on appeal).

5

The court's findings in this case support its conclusions. The court appropriately exercised its discretion in awarding custody to mother based on her status as the primary caregiver and the children's attachment to their home and community in Ohio. See Hazlett, 2011 VT 73, ¶ 14 (affirming award of custody to mother based on primary-caregiver status even though court found father better able to cooperate and foster positive relationship). While father disagrees with the court's conclusion, he fails to demonstrate an abuse of discretion. Rather, father "essentially asks us to reweigh the evidence on appeal, which we will not do." Rock v. Rock, 2023 VT 42, ¶ 42, 218 Vt. 292.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice