# Judy S. Palmer v. Walter F. Palmer

[416 A.2d 143]

No. 229-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and
Bristow, D.J., Specially Assigned

Opinion Filed June 3, 1980

*Wool & Murdoch,* Burlington, for Plaintiff.

*Paul, Frank & Collins, Inc.,* Burlington, for Defendant.

**Billings, J.** Plaintiff-appellee, Judy S. Palmer, was awarded a decree of divorce on March 27, 1979, by the Chittenden Superior Court on the ground that she and her husband, Walter F. Palmer, had lived separate and apart for six consecutive months, and the resumption of marital relations was not reasonably probable. The parties were married on February 11, 1961, and had five children ranging in age from six to fifteen at the time of the divorce. The decree granted care and custody of the parties' children to plaintiff, gave defendant visitation rights with certain limitations, provided for a disposition of the equity in the dwelling house, and ordered defendant to pay weekly child support. Defendant appeals from this decree and alleges error by the trial court in each of these orders. We disagree and affirm.

Defendant's first claim of error alleges that the trial court erred when it refused to consider the desires of the children, particularly the fourteen and fifteen year olds, in regard to their custody. At the final hearing, the children's custody was contested, and defendant, for the first time, requested that the court talk privately with one or more of the older children to gain additional insight into what custody arrangement would best serve their interests. It is noteworthy that defendant, until this request, had presented no witnesses, other than himself, nor introduced other evidence indicating his desire and fitness for custody of the children.

In support of his position, defendant cites *Cameron* v. *Cameron,* 137 Vt. 12, 398 A.2d 294 (1979), and posits that it explicitly allows children, fourteen or over, to voice their preferences regarding custody and visitation since the legislature, by virtue of 14 V.S.A. § 2650, allows them to select their guardians. We are not inclined to agree with this reading.

In *Cameron,* we held that a trial court did not abuse its discretion in refusing to allow a six-year old to testify to his or her parental preference. *Id.* at 14, 398 A.2d at 295–96.

The decision to allow a child to testify as to custody preference is in the trial court's discretion, and, absent a showing that it clearly abused its discretion, will not be placed in error. *Id.* This is not to say that a trial court may not, in the exercise of discretion, allow a child to testify if it finds this to be in the child's best interests. *Id.* See 15 V.S.A. § 292.

In the instant case, defendant has not shown that the trial court's discretion, in awarding plaintiff custody, was erroneously exercised, *Boone* v. *Boone,* 133 Vt. 170, 174, 333 A.2d 98, 101 (1975), or exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence. *Loeb* v. *Loeb,* 120 Vt. 489, 495–96, 144 A.2d 825, 829 (1958).

■ On the contrary, the evidence introduced regarding custody indicated that both parents equally loved the children, but that defendant, employed as a funeral director, was preoccupied with his job, sometimes working twenty-four hours a day and, often, seven days a week, and was unable therefore to spend a great deal of time with them. Because of this, plaintiff has had the principal responsibility for the children's upbringing, and has done, with a few exceptions, a creditable job.

Moreover, defendant, although having ample time to prepare for a custody dispute, took no preliminary steps. He did not request that an attorney be appointed pursuant to 15 V.S.A. § 594 to represent the children's interest, cf. *Lumbra* v. *Lumbra,* 136 Vt. 529, 394 A.2d 1139 (1978), or request that the Department of Social Welfare investigate, or even obtain and offer witnesses, other than himself, at trial to testify as to his fitness for custody and as to the children's best interests.

■ Defendant's second claim of error attacks the court's visitation order, which granted defendant visitation rights on alternate weekends and holidays, and for one month during the summer, with the specific limitation that defendant shall not have the "children overnight with him at any time when he is spending the night with a woman who is not his wife." It is primarily this quoted language that defendant excepts to.

This limitation placed on defendant's visitation rights is, again, a matter for the trial court's discretion, as it has before it "the freshest revelations of family relations." *Boone* v.

*Boone, supra,* 133 Vt. at 174, 333 A.2d at 101. Unless the exercise of this discretion is shown to be clearly unreasonable or untenable, the trial court's decision will be upheld, *Wetmore* v. *Wetmore,* 129 Vt. 583, 586, 285 A.2d 711, 713 (1971), as we cannot, in place of the trial court, weigh facts and reach our own conclusions. *Davidson* v. *Davidson,* 111 Vt. 24, 28, 9 A.2d 114, 116 (1939).

In the instant case, neither plaintiff nor defendant was puritanical, both had extra-marital affairs, and since the divorce both are seeing other persons. The court found, however, that defendant spends a great deal of time with his girl friend, often staying overnight, while plaintiff's relationship is more discreet and, apparently, less involved. Exposure to defendant's living arrangement would not, according to the trial court, be in the best interest of the children. While courts should not base their decisions solely on moralistic values, the record here convinces us that the limitations placed on defendant's visitation rights were in the children's best interest, and not an abuse of discretion. The trial court, which had freshest revelations before it, *Boone* v. *Boone, supra,* 133 Vt. at 174, 333 A.2d at 101, obviously felt that defendant's open relationship would have a more detrimental effect on the children than plaintiff's more discreet one.

Nor are we swayed by defendant's contention that this order, taken literally, would prohibit defendant from having the children if their grandmother stays with them overnight (as she is a woman who is not defendant's wife). This argument borders on specious, and requires such a narrow reading of the decree as to defeat its clear intent.

The third claim of error defendant asserts is that the trial court abused its discretion in its disposition of the equity in the dwelling house. In its findings, the court concluded that the home, at the time of the hearing, had a net equity of $42,110, and ordered the property held by the parties as tenants in common, with plaintiff having exclusive use and occupancy until all the minor children were emancipated. At this time, plaintiff would have the option to buy defendant's one-half interest for $21,055 (one-half of the net equity at the time of the divorce), plus interest at a rate of five percent per annum from the date of the judgment order.

Defendant avers that this property division is unconscionable as it prevents him from using his share of the equity until all the children are emancipated, and gives him only a five percent annual return on it, while plaintiff, at the same time, receives the use of the house, and, according to defendant's calculations, obtains an annual "conservative appreciation" of ten percent on the house.

This Court has repeatedly held that the disposition of property pursuant to a divorce is a matter of broad discretion for the trial court. *Whitcomb* v. *Whitcomb,* 137 Vt. 11, 398 A.2d 305 (1979); *Sweeney* v. *Sweeney,* 136 Vt. 199, 388 A.2d 388 (1978) ; *Peisch* v. *Peisch,* 132 Vt. 514, 321 A.2d 67 (1974). The court may decree the property in a manner it deems just and equitable, and unless abuse is demonstrated, its decree will stand. 15 V.S.A. § 751; *White* v. *White,* 133 Vt. 614, 349 A.2d 894 (1975). In the instant case, we find the trial court's discretion was neither withheld nor abused.

Defendant claims error in plaintiff retaining use of the home until all the children are emancipated. In *vanLoon* v. *vanLoon,* 132 Vt. 236, 242, 315 A.2d 866, 869-70 (1974), we expressly recognized the value of preserving the homestead for use of the minor children. This ensures that the Palmer children will not unnecessarily be displaced by their parents' estrangement.

Defendant also urges upon us error in the five percent per annum interest he was awarded by the trial court, when compared to the value plaintiff will receive from her use of the home and its future appreciation. We cannot and will not make an exact determination of the net value plaintiff derives from her exclusive use of the house and its potential future appreciation in value, as this was a matter for the trial court. Cf. *Carter* v. *Carter,* 135 Vt. 509, 512, 380 A.2d 99, 101 (1977) (Court won't compare cost of maintaining a house against value derived from exclusive use).

From our reading of the record, it appears that the court's actions were evenhanded. The court's property disposition recognized that plaintiff, because of her five children, had remained at home as a homemaker, and thus foregone work opportunities, whereas defendant had a stable, well-paying

position, with many benefits, as a funeral director in his family's large funeral business. These considerations persuade us that no abuse appeared and we, therefore, conclude that plaintiff's share in the property was not an "undeserved windfall."

Defendant's fourth and final claim of error alleges the amount of support payments were excessive. This argument, however, was largely abandoned by defendant at oral argument when reminded that an award of support is always modifiable; a reduction can always be sought. Even if not waived, defendant has not shown that the trial court's conclusions were so unreasonable or untenable as to be an abuse of discretion. *Cooper* v. *Cooper*, 132 Vt. 619, 326 A.2d 145 (1974); *Peisch* v. *Peisch, supra*. The evidence below clearly indicates that this award of $35 per child per week ($175) was not excessive when compared to defendant's base salary of $21,000, annual bonus of $4,000 (1978), and numerous occupational perquisites (car, insurance, clothing, travel and expenses).

The judgment, being supported by the facts and conclusions of law, will not be disturbed.

*Judgment affirmed.*

**Bristow, D.J.,** concurring in part and dissenting in part. I concur with the majority opinion regarding the defendant's first and fourth claims of error.

I respectfully dissent, however, from the majority opinion regarding the defendant's second claim of error. As noted by the majority, limitations placed on a parent's visitation rights are a matter for the trial court's discretion, to be exercised in the best interests of the child. This standard, however, should have been further enunciated by the majority in order to clarify the relationship between the trial court's discretion and the use of moralistic values noted by the majority. Conditions placed upon a parent's visitation rights should be imposed solely on the basis of the child's best interests. Although such a determination may involve factors entailing moralistic values, special conditions should be imposed only when exposure to certain conduct will injuriously affect the child.

The standard for determining the right to and the extent of visitation privileges is the welfare of the child. Special conditions placed upon this right, such as those imposed by the trial court below, are proper only when they are required in order to prevent deleterious effects on the child. Such conditions may not be imposed based solely upon a court's moralistic judgment of the parent's conduct, but must be based upon an express finding of injury to the child. The conclusory finding by the trial court, that exposure to the defendant's living arrangement would not be in the best interests of the children, is not sufficient in the absence of specific findings of fact to support such a conclusion.

As to the defendant's third claim of error, I must also dissent. Because of the speculative nature of the disposition of the home, the trial court has not properly exercised its discretion. 15 V.S.A. § 751 provides that the court shall:

> decree such disposition of the property owned by the parties separately, jointly, or by the entirety, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they shall be left by such divorce, [and] to the party through whom the property was acquired . . . .

Because of the uncertain value of the future appreciation of the home, it was improper for the trial court to make a property division based upon present value, coupled with a specified interest rate. Although this Court has noted that the division of marital property does not lend itself to a precise mathematical formula, *Sweeney* v. *Sweeney*, 136 Vt. 199, 200, 388 A.2d 388, 389 (1978), an attempt must be made to dispose of the property in a "just and equitable" manner. 15 V.S.A. § 751. By employing a mathematical formula, the majority has in effect made the division of the equity in the home subject to unforeseeable variables. The discretion of the trial court in determining a just and equitable division of property has been replaced by the variables of the marketplace. Such a result is improper, and contrary to the intent of 15 V.S.A. § 751.