2003 ND 167

**Frances M. REINEKE, Plaintiff, Appellee and Cross–Appellant,**

v.

**Ronald K. REINEKE, Defendant, Appellant and Cross–Appellee.**

No. 20030014.

Supreme Court of North Dakota.

Nov. 13, 2003.

Brenda A. Neubauer, Neubauer & Oster, Bismarck, N.D., for plaintiff, appellee and cross-appellant.

Theresa L. Zimmerman, American Legal Services, Bismarck, N.D., for defendant, appellant and cross-appellee.

KAPSNER, Justice.

[¶ 1] Ronald K. Reineke ("Reineke") appealed from the judgment entered in the divorce action brought by Frances M. Reineke ("Michels"),[1] and she cross-appealed. We affirm the judgment and remand with directions to retain jurisdiction.

I

[¶ 2] The parties married in 1983. The parties had two children, a son, born in 1985, and a daughter, born in 1988. In October 2001, Reineke began a social relationship with Betty Althoff and told Michels he wanted a divorce. The relationship with Althoff became intimate on December 31, 2001, or January 1, 2002. Michels sued for divorce in February 2002. In March 2002, Reineke, his daughter, Althoff, and Althoff's children

visited a friend of Althoff's in Nebraska. Reineke and Althoff shared a room, while Reineke's daughter and Althoff's children slept in another room. Reineke stayed at Althoff's home about once a week until he moved out of the family home in April 2002.

[¶ 3] The judgment entered on December 5, 2002, granted the parties a divorce, divided the marital property, ordered Reineke to pay rehabilitative spousal support of $300 per month from November 15, 2002, through November 15, 2006, or until Michels remarries, awarded Michels primary physical custody of the children, set a visitation schedule, and ordered Reineke to pay child support of $638 per month. Reineke appealed the judgment and Michels cross-appealed.

II

Reineke's Appeal

a. Property and Support

[¶ 4] Reineke contends the court's property distribution awarded him a negative $1,823.37 and awarded Michels $34,088 and is clearly erroneous. He contends the award of rehabilitative spousal support of $300 per month for four years to Michels is also clearly erroneous.

[¶ 5] The trial court in a divorce case must equitably distribute the marital property. N.D.C.C. § 14–05–24; *Sommers v. Sommers*, 2003 ND 77, ¶ 8, 660 N.W.2d 586. While a property distribution need not be equal to be equitable, the trial court must explain a substantial disparity. *Sommers*, at ¶ 8. A trial court's determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous. *Hogan v. Hogan*, 2003 ND

---

1. The December 2, 2002, findings of fact, conclusions of law, and order for judgment provides: "Fran shall be entitled to resume use of her maiden name Michels." The December 5, 2002, judgment provides: "Fran shall resume use of her maiden name Michels." Therefore, we will refer to the parties as "Reineke" and "Michels."

105, ¶ 14, 665 N.W.2d 672. There are no set rules for distributing marital property, but to assist in its determination, courts follow established caselaw setting out certain guidelines, known as the *Ruff–Fischer* guidelines, *Hogan,* at ¶ 19, derived from *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966).

[¶ 6] Under N.D.C.C. § 14–05–24.1, a trial court in a divorce case "may require one party to pay spousal support to the other party for any period of time." We recently addressed permanent and rehabilitative spousal support in *Sommers,* 2003 ND 77, ¶ 16, 660 N.W.2d 586 (quoting *Sommer v. Sommer,* 2001 ND 191, ¶ 14, 636 N.W.2d 423) (citations omitted):

> We recognize permanent spousal support and rehabilitative spousal support as two distinct remedies. Permanent spousal support is generally appropriate when the disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities lost in the course of the marriage. Furthermore, permanent spousal support may be awarded "where the marriage has been of long duration and the dependent spouse has health problems or is of such an age that adequate rehabilitation is unlikely." In contrast, rehabilitative spousal support is appropriate "when it is possible to restore an economically disadvantaged spouse to independent economic status or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity." However, even when the disadvantaged spouse is capable of rehabilitation, our Court has recognized permanent spousal support as an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.

We continued:

> When justified by the facts, rehabilitative support is preferred over permanent spousal support. *Fox,* 1999 ND 68, ¶ 21, 592 N.W.2d 541. "Nevertheless, when there is substantial disparity between the spouse's incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse." *Id.* While we have not endorsed the equalization of income between divorcing spouses as a measure of spousal support, *Riehl,* 1999 ND 107, ¶ 17, 595 N.W.2d 10, a difference in earning power is a proper factor for consideration in prescribing spousal support, *Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D.1990).

*Sommers,* at ¶ 17.

[¶ 7] "Questions of property division and spousal support cannot be considered separately or in a vacuum, but ordinarily must be examined and dealt with together, especially when there is a large difference in earning power between the spouses." *Sommers,* 2003 ND 77, ¶ 15, 660 N.W.2d 586. When awarding spousal support, the trial court is to apply the *Ruff–Fischer* guidelines. *van Oosting v. van Oosting,* 521 N.W.2d 93, 100 (N.D. 1994). A trial court's determination of spousal support is reviewed as a finding of fact and will only be overturned if it is clearly erroneous. *Corbett v. Corbett,* 2002 ND 103, ¶ 4, 646 N.W.2d 677.

[¶ 8] Thus, the *Ruff–Fischer* guidelines apply to both property division and spousal support, which ordinarily must be considered together, and a trial court's spousal support and property division determinations are findings of fact that are subject to the clearly erroneous standard of review. Under the *Ruff–Fischer* guidelines, the following factors should be considered:

the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Shields v. Shields*, 2003 ND 16, ¶ 7, 656 N.W.2d 712 (quoting *Mellum v. Mellum*, 2000 ND 47, ¶ 15, 607 N.W.2d 580). "Under the *Ruff–Fischer* guidelines, both economic and noneconomic fault are proper factors for the trial court to consider in dividing marital property." *McDowell v. McDowell*, 2001 ND 176, ¶ 6, 635 N.W.2d 139.

[¶ 9] Michels was 48 years old at the time of trial. She has two years of college and works as a records clerk in a medical clinic, earning about $19,000 per year. She has multiple sclerosis. Reineke was 47 years old at the time of trial. He works as a truck driver, earning about $32,000 per year. He has diabetes and has anxiety attacks. The trial court considered the *Ruff–Fischer* guidelines. For the property distribution, the court considered and made findings about the parties' ages, health, and incomes, the length of the marriage, and, among other things:

For most of the marriage Ron has been a controlling spouse. Testimony was received that he demeaned Fran and would do so in public. Ron expected to be waited upon and was controlling as to finances of the marriage. Ron was involved in a relationship with Betty prior to the divorce proceedings.

. . . .

15. The parties borrowed $10,000 from Fran's family to buy the house and are expected to pay this back. The remaining balance is approximately $8,100.

The court explained the disparity in the property distribution:

6. The Court notes the length of the marriage, the controlling nature of Ron and the actions of Ron contributing to the divorce as reasons for the unequal asset allocation. The Court further notes the loan from Fran's family for the home, if not paid back, will result in less inheritance for Fran as testified to by her mother.

The court found Michels needed rehabilitative spousal support:

12. The Court finds Fran has been disadvantaged by the marriage to Ron. Ron throughout the marriage has controlled the finances and has placed the family in a situation of debt. Such debt is with the family even though Fran's family helped to finance the home. The Court finds Fran will need a period of support to recover and be able to become self-supportive.

[¶ 10] From our review of the entire record, we conclude the trial court's property distribution and spousal support award are not clearly erroneous.

### b. Child Custody

[¶ 11] Reineke contends the trial court's award of primary physical custody of the parties' teenage children to Michels is clearly erroneous.

[¶ 12] "We exercise a limited review of child custody awards in divorce cases." *Schmidt v. Schmidt*, 2003 ND 55, ¶ 5, 660 N.W.2d 196. Under N.D.C.C. § 14–09–06.1, a trial court must award the custody of an unmarried minor child "to a person ... as will, in the opinion of the judge, promote the best interests and wel-

fare of the child." In making an initial custody determination, the court must determine a child's best interest and welfare by considering the following factors, when applicable, under N.D.C.C. § 14–09–06.2(1):

  a. The love, affection, and other emotional ties existing between the parents and child.

  b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

  c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

  d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

  e. The permanence, as a family unit, of the existing or proposed custodial home.

  f. The moral fitness of the parents.

  g. The mental and physical health of the parents.

  h. The home, school, and community record of the child.

  i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

  j. Evidence of domestic violence. . . .

  k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

  l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

  m. Any other factors considered by the court to be relevant to a particular child custody dispute.

"A custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous." *Schmidt,* 2003 ND 55, ¶ 5, 660 N.W.2d 196. "A trial court's findings of fact are presumptively correct, and we view the evidence in the light most favorable to the findings." *Id.*

[¶ 13] Here, the trial court found, with regard to factor *c:*

> Allegations have been made there is not sufficient food in the home of Fran. No proof other than statements made by [the daughter] to Ron were presented to this court. Fran has been the parent who has taken care of the needs of the children such as doctors appointments, cooking and other needs of the children.

With regard to factor *i,* the court found:

> The parties stipulated that [the daughter] desires to live with Ron. The Court looks at the actions taken by Ron in involving [the daughter] in these proceedings as inappropriate and discounts [the daughter's] desires because of these actions. The court views [the daughter's] relationships with adults through Ron and her actions in taking photos of the home as inappropriate. The court discounts the desires of [the daughter] in determining custody.

Thus, the court implicitly found that consideration of factors *c* and *i* favored Michels. The court specifically found that

consideration of factors *b, d, e, f, k,* and *m* favored Michels. The court specifically found factors *g* and *l* favored neither. The court found there was no domestic violence. The court did not find either party was favored by consideration of factors *a* and *h.* The court did not find that consideration of any factor favored Reineke.

[¶ 14] From our review of the record, we conclude the trial court's custody determination is not clearly erroneous.

### c. Child Testimony

[¶ 15] Reineke contends the court erred in refusing to allow the children to testify.

[¶ 16] Under N.D.C.C. § 14–09–06.2(1)(i), one of the factors the court must consider in making a child custody determination is "[t]he reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference." "Generally, a trial court has wide discretion regarding the examination of witnesses, and, under appropriate circumstances, a court may refuse to allow a witness to testify." *Fargo Women's Health Org., Inc. v. Larson,* 391 N.W.2d 627, 630 (N.D.1986). Under N.D.R.Civ.P. 61, "[n]o error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or . . . otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."

[¶ 17] The legislature has determined that fourteen-year-old children are capable of acting responsibly in a variety of matters. *See, e.g.,* N.D.C.C. § 14–10–17 ("Any person of the age of fourteen years or older may contract for and receive examination, care, or treatment for sexually transmitted disease, alcoholism, or drug abuse without permission, authority, or consent of a parent or guardian.");

N.D.C.C. § 27–20–34 (prosecution of a child of fourteen or more years of age for delinquent conduct designated a crime or offense may be transferred from juvenile court to another court); N.D.C.C. § 30.1–27–03 ("A minor of fourteen or more years may prevent an appointment of the minor's testamentary guardian from becoming effective, or may cause a previously accepted appointment to terminate."); N.D.C.C. § 30.1–27–06 ("The court shall appoint [as guardian] a person nominated by the minor, if the minor is fourteen years of age or older, unless the court finds the appointment contrary to the best interests of the minor."); N.D.C.C. § 47–24.1–14 (on petition of a minor who has attained the age of fourteen years, a court may order a custodian of the minor's property to deliver or pay to the minor so much of the custodial property as the court considers advisable); N.D.C.C. § 47–24.1–18 (a minor who has attained the age of fourteen years may designate a successor custodian if none has been designated, and may petition the court to remove a custodian and to designate a successor custodian). Thus, there is a legislative policy that children of the age of those involved in this case can and do make significant decisions in their lives, which courts must consider in determining children's custody preferences, and in making custody decisions.

[¶ 18] Although N.D.C.C. § 14–09–06.2(1) only requires a court to consider a child's reasonable custodial preference, without guaranteeing a right to testify, we conclude the trial court abused its discretion by refusing to allow the fourteen and seventeen-year-old children in this case to testify, without first assessing whether the children were of sufficient intelligence, understanding, and experience to express a preference.

[¶ 19] Although we have concluded the trial court abused its discretion in refusing

to allow the children to testify without such an assessment, we do not reverse the court's custody determination, because the court assumed the daughter preferred to live with her father in making its determination, and, under the trial court's analysis, consideration of the statutory factors overwhelmingly favored Michels.

### d. Custody Investigator

[¶ 20] Reineke contends the trial court erred in denying his request for appointment of a custody investigator. The appointment of a custody investigator under N.D.C.C. § 14–09–06.3 or a guardian ad litem under N.D.C.C. § 14–09–06.4 is committed to the trial court's discretion. *Green v. Green*, 1999 ND 86, ¶ 9, 593 N.W.2d 398. We are not persuaded that the trial court abused its discretion in denying Reineke's request for appointment of a custody investigator.

### III

### Michels's Cross–Appeal

### a. Spousal Support

[¶ 21] Michels contends "[a]n award of rehabilitative spousal support in the amount of $300.00 per month for four years, or until Fran remarries, is clearly erroneous."

[¶ 22] Michels earns about $19,000 per year and Reineke earns about $32,000 per year. The evidence shows neither party is likely to earn significantly more money in their present positions. While the award of $300 per month is not clearly erroneous, we are not certain of the rationale underlying the trial court's decision to end spousal support after four years. We have "recognized permanent spousal support as an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living." *Sommers v. Sommers*, 2003 ND 77, ¶ 16, 660 N.W.2d 586 (quoting *Sommer v. Sommer*, 2001 ND 191, ¶ 14, 636 N.W.2d 423). When there is a substantial disparity in divorcing parties' incomes, a permanent support award may be appropriate. *Sommers*, at ¶ 17. "While we have not endorsed the equalization of income between divorcing spouses as a measure of spousal support," *id.*, this Court upheld such an award in *Glander v. Glander*, 1997 ND 192, ¶ 18, 569 N.W.2d 262. Although "the trial court would not have erred in awarding permanent spousal support or rehabilitative support without reduction," *Sommers*, at ¶ 18, we conclude the award was not clearly erroneous.

[¶ 23] We further conclude, however, that the court should have retained jurisdiction for possible modification of the spousal support obligation.

If trial courts find no immediate need for awarding permanent spousal support, they should retain jurisdiction to do so beyond a temporary award, when facing uncertainty about the need for permanent support. This will further the interests of a spouse potentially in need of support on a permanent basis by leaving the award open for later modification.

*van Oosting v. van Oosting*, 521 N.W.2d 93, 101 (N.D.1994). With her multiple sclerosis, much lower income than Reineke, and slim chance of substantially increasing her income in her present position, Michels clearly is "a spouse potentially in need of support on a permanent basis." *Id.* We, therefore, direct the trial court to modify the judgment on remand to retain jurisdiction to award spousal support in the future, should subsequent circumstances demonstrate a need for modification of the support award.

### b. Attorney Fees and Costs

[¶ 24] Michels contends the trial court abused its discretion in not

awarding her attorney fees under N.D.C.C. § 14–05–23. "An award of attorney fees in a divorce action under N.D.C.C. § 14–05–23 is within the sound discretion of the trial court and will not be set aside absent an abuse of discretion." *Kautzman v. Kautzman*, 1998 ND 192, ¶ 32, 585 N.W.2d 561. "The principal factors for consideration in awarding attorney fees in a divorce action are the parties' needs and ability to pay." *Id.* "The trial court may also consider whether one party's actions unreasonably increased the time spent on the dispute." *Id.* Considering the disparity in the property distribution, Michels's needs, and Reineke's ability to pay, in light of his needs and his child support and spousal support obligations, we conclude the trial court did not abuse its discretion in failing to award Michels attorney fees.

### IV

[¶ 25] The judgment is affirmed and the matter is remanded to the trial court for modification of the judgment to retain jurisdiction over spousal support.

[¶ 26] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, JJ., concur.

NEUMANN, Justice, concurring and dissenting.

[¶ 27] I concur in almost all of the majority's opinion. The only exception is paragraph 18, the majority's holding that it is, as a matter of law, error not to permit fourteen and seventeen-year-old children to testify regarding custody if called as witnesses.

[¶ 28] Most children experiencing the upheaval of divorce would prefer that the parents find a way to resolve their differences, drop their divorce, and live happily ever after in the same house with one another and with their children. Children desperately want—desperately need—the love of both parents in the midst of such great upheaval. Asking them to choose one parent over the other in such a situation is barbaric. Subjecting their children to such trauma merely for the sake of victory is a clear indication of the strength of the self-centered madness that engulfs too many divorcing parents. Our courts should do as much as possible to discourage such madness and the resulting trauma.

[¶ 29] I realize there are cases in which a child's strongly held, well-founded opinion on custody should be expressed to the courts, particularly where there has been some form of genuine mistreatment or abuse. Fortunately, such cases are still the exception, not the rule, and clearly such facts were not present in this case. Here, the trial court explicitly found the appellant had inappropriately attempted to recruit the children to his side of the battle. The trial court cited this inappropriate manipulation of the children as the basis for its decision not to hear the children's testimony.

[¶ 30] This Court's failure to recognize the abusive nature of such manipulative exploitation encourages short-sighted parents to traumatize their children by attempting to recruit them in the parents' self-centered battle. I cannot fault a trial court for trying to discourage such behavior, and I cannot join that part of the majority's opinion finding such fault.

[¶ 31] WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.

MARING, Justice, concurring and dissenting.

[¶ 32] I concur in the majority opinion with the exception of that part holding the trial court abused its discretion when it

refused to allow the children of the parties to testify as to their preferences and other matters and that part holding the trial court did not err when it failed to award permanent spousal support.

[¶ 33] The majority opinion concludes the trial court abused its discretion by refusing to allow the children to testify "without first assessing whether the children were of sufficient intelligence, understanding, and experience to express a preference." Competency of a person to be a witness is to be determined by the trial court. *See State v. Oliver*, 78 N.D. 398, 49 N.W.2d 564, 574 (1951). The majority recognizes the trial court has broad discretion in not only the admission of evidence, but the refusal to allow a witness to testify. *See Fargo Women's Health Org., Inc. v. Larson*, 391 N.W.2d 627, 630 (N.D.1986).

[¶ 34] Under N.D.C.C. § 14–09–06.2(1)(i), "[t]he reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference[,]" must be one of the factors the court considers in a custody determination. Therefore, in the context of the statute, the trial court's determination of whether the child is competent to be a witness entails an analysis of whether the child is of "sufficient intelligence, understanding, and experience" to express a preference for one parent over the other parent.

[¶ 35] In the present case, an interim custody order was sought and Reineke offered, at that time, affidavits signed by the children to support his position. Judge Riskedahl ordered that the mother, Michels, receive interim custody and stated:

> The record also establishes that the defendant has engaged in a pattern of intimidating and threatening behavior towards the plaintiff, especially since the initiation of the divorce process. At one

point he had the locks on the house changed, and effectively "locked out" the plaintiff for several days.

> The record of the case suggests that the defendant, although hard working and certainly financially supporting his family, has exercised a pattern of controlling behavior towards his wife and children. The "style of conduct" exhibited by the defendant indicates to the Court that it should not give considerable weight to the affidavits of the children, indicating they prefer that custody be placed with their father. It appears that the defendant's method of dealing with people would be such that the children would be in an awkward and uncomfortable situation if they tended to disagree with their father. It is apparent that he has attempted to draw them into the circumstances of the marital discord and wishes to have them "take sides" in support of him. The Court also concludes that the way in which the defendant has exposed his children to this extra-marital affair does not reflect a concern on his part for their best interests.

Judge Romanick, who ultimately tried this case, noted in his order denying the appointment of a custody investigator that he had reviewed the documentation filed with the interim order and Judge Riskedahl's interim order before arriving at his decision on the motion.

[¶ 36] At trial, the trial court delayed its ruling until it had heard a full day of testimony and then invited each party to make an offer of proof why the court should allow the children to testify. After considering the evidence that Reineke's counsel said would be offered by the fourteen-year-old daughter, the court concluded that the daughter would basically testify, "I want to live with Dad." No offer of proof was made as to the testimony of the

minor son. *See* N.D.R.Ev. 103(a)(2); *Wagner v. Peterson,* 430 N.W.2d 331, 332 (N.D.1988) (holding without an offer of proof, the court cannot determine if the exclusion of the testimony was prejudicial). Further, Reineke never requested that the court interview the children in chambers.

[¶ 37] The trial court found Michels stipulated that the minor daughter preferred to live with Reineke. The preference of the minor child was, therefore, in evidence. Reineke never makes it clear on the record or in his brief what other testimony by the minor daughter was relevant to the court's consideration of custody or visitation. Both on the record and in his brief, there are only general statements by Reineke's counsel that the minor child's testimony "would have collaborated their father's testimony, counteracted the testimonies of the mother's witnesses and would have provided imperative insight into the relationship between the children and their mother."

[¶ 38] The trial court's findings clearly indicate that it concluded the fourteen-year-old daughter was not of sufficient maturity, intellect, or experience to competently testify on any matters. The trial court found the minor daughter had been "acting out" since the divorce and "has had trouble following direction from her mother...." The trial testimony was that the minor daughter was acting unruly, yelling, throwing things, and breaking things, and that she was angry and full of emotion. Furthermore, the trial court found that Reineke had the children read all the allegations made by each party and had inappropriately drawn them into the divorce proceeding, including having the minor daughter take pictures of the home to further his position that the home was messy. The trial court clearly determined the will of the minor daughter was being controlled by Reineke and concluded she was not of sufficient maturity to make an intelligent choice and be a competent witness.

[¶ 39] Although I believe it is preferable for a trial court to interview the children in chambers on the record with counsel for the parties present when deciding whether a child is of sufficient "intelligence, understanding, and experience" to state a preference, N.D.C.C. § 14–09–06.2(1)(i) does not require that procedure. Whether to interview a child to determine the child's preference is a matter within the trial court's discretion. *See Tasker v. Tasker,* 395 N.W.2d 100, 103 (Minn.Ct. App.1986); *Paryzek v. Paryzek,* 776 P.2d 78, 81 (Utah Ct.App.1989); *Palmer v. Palmer,* 138 Vt. 412, 416 A.2d 143, 144 (1980). Here, the record indicates the trial court heard evidence that went directly to the maturity of the minor daughter to be able to intelligently and independently testify. A court may refuse to consider a child's preference if the child is not mature. *McDowell v. McDowell,* 2001 ND 176, ¶ 20, 635 N.W.2d 139. I believe that when the welfare of a child is involved, a trial court does not abuse its discretion if it assesses the child's competence through evidence such as was introduced in this case, rather than through an interview.

[¶ 40] Furthermore, in this case, the photographs of the mother's home taken by the daughter came into evidence and Reineke testified to things his minor daughter told him. The minor daughter's testimony would have been subject to an objection that it was cumulative.

[¶ 41] The majority string cites numerous statutes and appears to take the position that a fourteen-year-old child should be permitted to testify because she is fourteen. Our Court has never held the age of a child is the determinative fact in concluding whether a child is mature and has the capacity to make an intelligent choice in a

child custody case. *See Barstad v. Barstad*, 499 N.W.2d 584, 588 (N.D.1993). In *Palmer*, 416 A.2d at 144, the Supreme Court of Vermont declined to agree that because a fourteen-year-old child is allowed by statute to select their guardian, children fourteen and older must be allowed to voice their preference regarding custody and visitation. The trial court refused to hear the desires of the fourteen and fifteen-year-old children. The Vermont Supreme Court held the trial court had not abused its discretion when the evidence supported the award of custody. "The decision to allow a child to testify as to custody preference is in the trial court's discretion, and, absent a showing that it clearly abused its discretion, will not be placed in error." *Id.*

[¶ 42] I am concerned the majority opinion fails to recognize that in custody disputes, children can be "victimized by the animosities of their parents." *Jordana v. Corley*, 220 N.W.2d 515, 524 (N.D.1974) (Vogel, J., concurring). Also, "a child's preference ... may, in some instances, be motivated by goals and ambitions which undermine the significance of that preference and may, in fact, be detrimental to the child's best interests." *Alvarez v. Carlson*, 524 N.W.2d 584, 590 (N.D.1994). Custody disputes are traumatic situations for children and subjecting them to stating a preference for one parent adds more trauma, especially if it involves testimony in open court. Irreparable injury to the parent-child relationship may result from such confrontation. Therefore, every effort should be made by the trial court when a child states a preference, to determine if the child's preference is the result of undue influence by a parent. *See Barstad*, 499 N.W.2d at 588. Children during their minority often change their preference from one parent to the other. *See* Judith S. Wallerstein et al., *The Unexpected Legacy of Divorce* 116 (2000) (stating

"In following these alliances over the years, I find that the vast majority are short-lived and can even boomerang. Children are capricious allies. They soon become bored or ashamed of their mischief. Not one alliance lasted through adolescence and most crumbled within a year or two.").

[¶ 43] Under the facts of this case and where the children's preference was stipulated to on the record, the trial court did not abuse its discretion by not holding an in-chamber interview of the children.

[¶ 44] I respectfully dissent also from that part of the majority opinion affirming the trial court's award of rehabilitative spousal support in place of permanent spousal support. Our standard of review is clearly erroneous. *Sommer v. Sommer*, 2001 ND 191, ¶ 8, 636 N.W.2d 423. A trial court's findings are clearly erroneous if there is no evidence to support its findings, they are induced by an erroneous view of the law, or even if there is some evidence to support its findings, we are left with a definite and firm conviction a mistake has been made. *Id.* I am of the opinion that the trial court erred in applying our law on rehabilitative and permanent spousal support to the facts of this case, and I am left with a firm conviction a mistake has been made.

[¶ 45] The trial court distinguishes between permanent spousal support and rehabilitative spousal support in its findings. It states that permanent spousal support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated. Further, rehabilitative spousal support is an attempt to provide education, training, or experience that will enable the recipient to achieve "adequate" or "appropriate" self-support while improving her employment skills. The trial court also notes that "[s]pousal support is aimed at

balancing the burdens and disadvantages created by the divorce." The trial court found that Michels has been disadvantaged by the marriage to Reineke. However, the trial court errs in awarding only rehabilitative spousal support and finding that Michels will need "a period of support to recover and be able to become self-supportive." The evidence does not support that Michels can be rehabilitated, is able to "recover," or able to become "self-supportive."

[¶ 46] We have distinguished permanent and rehabilitative spousal support:

There are two types of spousal support. Permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation. Rehabilitative spousal support, on the other hand, is awarded to provide a disadvantaged spouse time and resources to acquire an educational, training, work skills, or experience that will enable the spouse to become self-supporting.

*van Oosting v. van Oosting*, 521 N.W.2d 93, 100 (N.D.1994) (citations omitted).

[¶ 47] In *van Oosting*, the wife was 44 years of age, had no education beyond high school, had a limited work experience, suffered from Multiple Sclerosis, which was in remission, was depressed as a result of the divorce, and had to adjust to handling her own affairs. The trial court awarded the wife one year of spousal support to rehabilitate herself. Our Court held that the trial court's award of rehabilitative support was clearly erroneous and we remanded directing the trial court to award permanent support subject to future modification. *Id.* at 100, 101. We pointed out that under the *Ruff–Fischer* guidelines, the court is to consider the health and physical condition of the parties. *See Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107,

111 (1952). We highlighted the significance the health and physical condition of the parties has in determining support and stated:

Our sister-state, Minnesota, is in agreement with our holdings emphasizing the importance of the health of the parties when awarding support. . . .

The Minnesota legislature has not only codified the factors to be taken into account when awarding spousal support, but has also created a "presumption" for permanent spousal support when there is uncertainty as to its necessity. (Citation omitted.) This approach is helpful.

*van Oosting*, at 101.

[¶ 48] Under the facts of this case, permanent spousal support is necessary for the parties to equitably share in the burdens of the divorce. The marriage is of long duration, the parties have been married for 19 years and together two years prior to marriage, for a total of 21 years together. Michels is 48 years old and has Multiple Sclerosis, which is a progressive disease. The trial court found her Multiple Sclerosis could cause difficulties in the future concerning her ability to remain employed. Michels earns about $19,000 per year as a records clerk in a medical clinic and has completed two years of college. Her salary is approximately 60 percent of what Reineke earns as a truck driver for Waste Management, which is about $32,000 per year. In addition, he receives overtime on a regular basis.

[¶ 49] The trial court found that Reineke desired out of the marriage because he had started a relationship with someone else, that he had been a controlling spouse, and that he had been demeaning to Michels in public. The trial court found the parties lived a middle income life. Although Michels received the home in the divorce, the trial court found it was in need of $11,000 of repairs, ordered Michels to

pay the first mortgage, one-half of the second mortgage, and the entire $8,100 remaining on the loan from her parents to purchase the home.

[¶ 50] In its findings of fact, the trial court found Michels was "not expecting any significant raises in the near future and appears to have topped out as to work levels." Accordingly, there is nothing in the evidence that Michels situation will improve, change, or that she will be able to "recover." The only thing that may change, and for the worse not the better, is Michels' Multiple Sclerosis, which the trial court noted "is a concern." In light of Michels' age, the fact she has "topped out as to work levels," and her significant health problem of Multiple Sclerosis, rehabilitation is unlikely. Permanent spousal support is the appropriate remedy to ensure the parties equitably share the reduction in their separate standards of living. Under the majority opinion, the issue of spousal support is reserved and Michels, in four years, would have the burden of showing a material change in circumstances justifying a modification. Yet the trial court's findings make it clear that it does not expect anything will change with respect to the parties' financial situation. The trial court also found Reineke "does not expect any significant raises in the near future." In order to modify an award of spousal support, there must be a showing of a material change in circumstances, which "is something substantially affecting the financial abilities or needs of a party." *Sommer*, 2001 ND 191, ¶ 18, 636 N.W.2d 423 (citation omitted). Michels will be unable to make this showing unless her Multiple Sclerosis affects her ability to work in four years. Otherwise, her spousal support will end even though the parties' finances remain unchanged and there remains no expectation for her to rehabilitate or "recover."

[¶ 51] I would reverse and remand, directing the trial court to enter an award of permanent spousal support in the amount of $300 per month.

[¶ 52] I, therefore, concur in part and dissent in part.

[¶ 53] Mary Muehlen Maring