2006 ND 182

**Dean Alan CLARK, Plaintiff and Appellant**

v.

**Jean Marie Crandall CLARK, Defendant and Appellee.**

No. 20050436.

Supreme Court of North Dakota.

Aug. 21, 2006.

Jerilynn Brantner Adams, Vogel Law Firm, Fargo, N.D., for plaintiff and appellant.

Tracey R. Lindberg, Tracey R. Lindberg Law Firm, Breckenridge, MN, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Dean Alan Clark appealed from an amended judgment and decree awarding Jean Marie Crandall Clark primary physical custody of their two minor sons and ordering him to pay child support. We conclude the district court did not err in granting Jean Clark physical custody of the children, but erred as a matter of law in computing Dean Clark's child support obligation. We affirm in part, reverse in part, and remand for recalculation of the child support obligation accompanied by an explanation of how the amount was determined.

I

[¶ 2] The parties were married in 1989 and lived in Lidgerwood. The couple's two sons were born in 1991 and 1995. The parties divorced in 2001 and were awarded joint physical custody of the children, with custody of the boys rotating between the parties on a week-by-week basis. For child support the parties were ordered to each pay $250 per month to a joint account until the youngest child turned 18 or graduated from high school, whichever occurred later. Dean Clark was awarded the couple's farm property and Jean Clark was awarded her Lidgerwood home.

[¶ 3] The children began residing with Jean Clark in Lidgerwood during the school year beginning in August 2003, with Dean Clark having them every other weekend. In October 2004, Jean Clark filed a motion requesting an order voiding the divorce judgment, amending the physical custody provisions of the judgment to provide her sole physical custody of the children, or formally modifying the exchange schedule for the children. Dean Clark responded by insisting on a return to the weekly custodial exchange and by filing a motion seeking sole physical custody of the children. On March 3, 2005, a custody investigator was appointed by stipulation of the parties.

[¶ 4] On July 17, 2005, the custody investigator served her report on the parties. The custody investigator recommended that Jean Clark be granted sole physical custody of the children with visitation for Dean Clark during the school year and rotating custody during the summer months. Dean Clark sought a continuance of the scheduled August 15, 2005, hearing on the motions, and a judicial referee granted a continuance until September 19, 2005. Dean Clark supplemented his expert witness interrogatories on September 7 and 8, 2005, by naming two additional expert witnesses, Krislea Wegner and Nancy Hein–Kolo. The opinions and reports of those experts were served on Jean Clark on September 14, 2005. Jean Clark moved to exclude the testimony because of untimely disclosure and unfair surprise. Dean Clark moved to bar the testimony of Jean Clark's proposed rebuttal expert witness, Dr. Stephen Timm. The referee granted both parties' motions in limine to exclude the expert testimony and denied Dean Clark's request for another continuance. The referee also denied Dean Clark's request to have the children testify.

[¶ 5] Following the September 19–21, 2005, hearing, the referee modified the custody provisions of the divorce decree by awarding Jean Clark physical custody of the children. The referee granted Dean Clark visitation on alternating weekends and one evening a week during the school year, and ordered that each party have the children for alternating two-week time periods during the summer. The referee also ordered that Dean Clark pay $3,487 per month in child support. Upon Dean Clark's request for review, the district court adopted the referee's findings of fact and conclusions of law, and an amended judgment was entered.

## II

[¶ 6] Dean Clark argues the referee erred in excluding the affidavits and testimony of his expert witnesses, which he claims would have contradicted the custody investigator's report and recommendations. Dean Clark contends the referee, at the very least, should have granted his request for another continuance.

[¶ 7] The decision to admit expert testimony rests within the discretion of the district court and will not be reversed in the absence of a showing of abuse of discretion. *Rittenour v. Gibson*, 2003 ND 14, ¶ 29, 656 N.W.2d 691. We also will not reverse a district court's decision to deny a continuance absent an abuse of discretion by the court. *Paulson v. Paulson*, 2005 ND 72, ¶ 16, 694 N.W.2d 681. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process. *Flatt ex rel. Flatt v. Kantak*, 2004 ND 173, ¶ 15, 687 N.W.2d 208.

[¶ 8] Under the discovery provisions of N.D.R.Civ.P. 26(e):

(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to

. . . .

(B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.

The purpose of Rule 26(e) is to eliminate surprise and allow the opposing party a fair opportunity to meet the evidence at trial. *Myer v. Rygg*, 2001 ND 123, ¶ 21, 630 N.W.2d 62; *Kjonaas v. Kjonaas*, 1999 ND 50, ¶ 16, 590 N.W.2d 440. In *Dewitz by Nuestel v. Emery*, 508 N.W.2d 334, 339 (N.D.1993), this Court explained:

Rule 26[ (e)] does not establish a fixed time prior to trial within which interrogatories must be supplemented so as to be seasonable. The determination as to seasonableness is necessarily a case by case determination, within the sound discretion of the trial judge. To be seasonable, however, the supplemental response must be made a reasonable time before trial taking into account the purpose of the rule which is the elimination of surprise at trial.

A district court has discretionary authority in determining appropriate sanctions for a party's failure to timely supplement interrogatories by disclosing the identity of an expert witness and the substance of the expert's testimony. *See Peek v. Berning*, 2001 ND 34, ¶ 25, 622 N.W.2d 186.

[¶ 9] Dean Clark served supplemental responses naming his expert witnesses on September 7 and 8, 2005, about 12 days before the scheduled hearing. Dean Clark did not reveal the substance of their opinions until late in the afternoon of September 14, 2005, only five days before the hearing. The referee had already granted

Dean Clark one continuance of the hearing. In excluding the testimony of Dean Clark's expert witnesses and Jean Clark's rebuttal expert witness, and in denying Dean Clark's request for another continuance, the referee relied on a "combination of factors," explaining:

> Because of the time frame involved, because this matter has been pending for almost a year now, and because of my belief that it is in the best interests of these children that we get the matter resolved as efficiently as possible, I am not going to—and there wasn't a request for—I'm not going to continue the matter and I am going to exclude the reports of Dr. Hein–Kolo and Dr. Wegner and Dr. Timm. Dr. Timm's report—or testimony probably would not be relevant to anything without the previous two and that is because of the fact that there simply was not adequate time to prepare and I don't fault Mr. Timm. I'm not trying to point any fingers here. I am absolutely convinced that on the day [Dean Clark's trial attorney] got these reports, he sent these reports to opposing counsel. But, as I indicated to counsel in chambers, I also have significant questions that these reports are going to produce anything to us that hasn't already been alleged and has been or will be testified to.

> [Dean Clark's trial attorney] responded as soon as he had the information, but the experts didn't get the information, didn't get the report to him, until the 13 or the 14 or somewhere in that range. And, as [Jean Clark's attorney] points out, it would have been impossible to depose the witnesses before—or not impossible but certainly less than fruitful to depose the witnesses before those reports were in. So those [sic] combination of factors have led to my decision to exclude as indicated.

[¶ 10] Although we have said the preferred remedy for any late disclosure is a continuance rather than an exclusion of expert testimony, *see Reimche v. Reimche*, 1997 ND 138, ¶ 9, 566 N.W.2d 790, the referee reasoned that the proceedings had been pending for nearly one year and another continuance would not be in the children's best interests. The referee's decision to exclude the expert witnesses and deny the request for continuance is not arbitrary, unreasonable, or unconscionable, and is the product of a rational mental process. We conclude the referee did not abuse his discretion.

### III

[¶ 11] Dean Clark argues the referee erred in excluding the testimony of the children without first assessing their ability to express a preference regarding child custody.

[¶ 12] Under N.D.C.C. § 14–09–06.2(1)(i), one of the factors a court must consider in deciding child custody is "[t]he reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference." We have recognized there is a legislative policy that children of sufficient age and maturity "can and do make significant decisions in their lives, which courts must consider in determining children's custody preferences, and in making custody decisions." *Reineke v. Reineke*, 2003 ND 167, ¶ 17, 670 N.W.2d 841. We have also observed that, "[a]lthough age is not the exclusive indicator of a child's maturity and capacity to make an intelligent choice, generally, a child's preference is entitled to more weight as he or she grows older," and that "it would be foolhardy to ignore the input of an older teenager's firmly held preference in the resolution of his or her custody." *Barstad v. Barstad*, 499 N.W.2d 584,

588 (N.D.1993). This Court has further held that "[a] mature child's preference should be considered by the trial court as a change in circumstances if there are persuasive reasons for that preference, persuasive enough to result in a change in custody." *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 10, 562 N.W.2d 390; *see also Volz v. Peterson*, 2003 ND 139, ¶ 11, 667 N.W.2d 637. We review a district court's decision whether to allow children to testify about their custody preference under the abuse of discretion standard. *See Reineke*, at ¶ 16.

[¶ 13] In *Reineke*, 2003 ND 167, ¶ 18, 670 N.W.2d 841, a majority of this Court held the district court abused its discretion in refusing to allow 14– and 17–year–old children to testify "without first assessing whether the children were of sufficient intelligence, understanding, and experience to express a preference." However, acknowledging that under N.D.R.Civ.P. 61 "no error in either the admission or the exclusion of evidence . . . is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice," we declined to reverse the district court's decision:

> Although we have concluded the trial court abused its discretion in refusing to allow the children to testify without such an assessment, we do not reverse the court's custody determination, because the court assumed the daughter preferred to live with her father in making its determination, and, under the trial court's analysis, consideration of the statutory factors overwhelmingly favored [the mother].

*Reineke*, at ¶ 19.

[¶ 14] In this case, the children were 10 and 14 years old at the time of the hearing. The referee excluded their testimony without first assessing their ability to express a preference on child custody, reasoning:

> In listening to the testimony, these two young fellas have been interviewed at least four times by the custody investigator. I'm not sure whether there were more. They have been interviewed by Ms. Ellingson. I believe if I have that name right. They have been interviewed by Dr. Wegner if I have that name right. The indication from the custody investigator was that it took her some effort and a fair amount of time to gain the confidence of these boys so that they would—I'm searching for the word—open up and so that she could obtain what she thought was credible information from them. I believe both parties have testified that at least one of these young men tends to be pretty quiet. I think the term shy has been used.
>
> There are allegations, and this is not a finding by the Court, that one or both parents may have discussed this action with these kids. And it is my opinion that I'm fairly certain what I would hear from them if I did speak with them—I'm fairly certain that it would take more time than we could put into this to establish any sort of rapport with these guys if at this point in these proceedings they were inclined to open up to the Court at all. And I'm of the opinion that if the poignant question is put to these gentlemen as to their preference, they can't win no matter what their answer is. And my obligation here is to look out for the best interests of these children. I think the probative value of any conversation the Court might have even without the presence of the parents is greatly outweighed by the potential detriment to these kids. I don't think any new information would be gathered from them. So I'm going to decline to interview them.

[¶ 15] The referee should have interviewed the children. Although the court indicated it was applying the N.D.R.Ev. 403 balancing test in excluding the testimony, the referee's finding of potential detriment to the children is based on conjecture. Without interviewing the children, the referee could not know how testifying about their custody preferences would affect the children. Merely assuming that a child's testimony in a custody dispute will be potentially detrimental to the child renders the reasonable-preference-of-the-child factor inoperative and undermines the legislative policy that children of sufficient age and maturity are entitled to express their preference. *See Reineke*, 2003 ND 167, ¶ 17, 670 N.W.2d 841.

[¶ 16] Nevertheless, as in *Reineke*, 2003 ND 167, ¶ 19, 670 N.W.2d 841, we do not reverse the custody decision, because the referee and the parties clearly knew the custody preferences of these children. The custody investigator testified the children expressed interest in living with their father. The referee explicitly found that the reasonable-preference-of-the-child factor favored Dean Clark, but "the degree of the children's involvement in their parents' disputes brings the weight of their expressed preference into question." We conclude the referee's failure to interview the children provides no ground to disturb the custody decision.

IV

[¶ 17] Dean Clark argues the referee erred in modifying the physical custody provisions of the divorce judgment because no significant change of circumstances had occurred since the judgment was entered.

[¶ 18] Under N.D.C.C. § 14–09–06.6(6), a court may modify a prior custody order after two years from the date of entry of an order establishing custody if:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

The party seeking to modify a custody order bears the burden of showing that a change of custody is required. *Hanson v. Hanson*, 2005 ND 82, ¶ 8, 695 N.W.2d 205. A district court's decision whether to change custody is a finding of fact subject to the clearly erroneous standard of review. *Sweeney v. Sweeney*, 2002 ND 206, ¶ 10, 654 N.W.2d 407. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 19] The referee found "a material and significant change in the circumstances of the parties" based on the following:

10. The court finds that during the school year preceding the commencement of this action, the boys were in the primary care and custody of [Jean Clark], and that such an arrangement provided for stability and continuity for the children. The custody investigator interviewed references and contacts provided by both parties, and the references, including a reference provided by Dean Clark, confirmed that the minor children resided with Jean Clark during the school year. The Court further finds that such an arrangement was made pursuant to the agreement of

[Dean Clark], and that as such, the primary residential structure of the minor children had changed for a significant period, prior to the commencement of this motion.

11. Following the commencement of this motion, [Dean Clark] insisted that the parties continue to exchange the children on a week to week basis. During the time that [Dean Clark] had custodial time with the children, the Court finds that he did not encourage and facilitate a positive relationship between the children and their mother, Jean Clark. As provided in the testimony/affidavits of [Jean Clark], her messages and telephone calls to the children were not always returned. For example, during cross examination, [Dean Clark] admitted that when [Jean Clark] attempted to call to see how the youngest son was doing when [he] had stayed out of school due to illness, rather than allowing her to talk to [him], he told her to, "Go to H* * *" at least twice in response to her requests to speak to the child.

12. The custody investigator determined that the children have heard their father's significant other downgrade and denigrate [Jean Clark] in their presence, and that such conduct is allowed by [Dean Clark].

13. Although the parties are to divide the summers, the conduct of [Dean Clark] resulted in Jean Clark only having the children for about four weekends during the summer.

14. Other instances in which [Jean Clark's] contact with the children was artificially limited included [Dean Clark's] retention of the children until late in the day on Mother's Day, 2005.

[¶ 20] The parties' original divorce judgment provided for rotating custody. We have said that rotating custody arrangements are in a child's best interests only if the parents are able to cooperate and set aside their differences and conflicts in their role as parents. *See Peek*, 2001 ND 34, ¶ 22, 622 N.W.2d 186; *Jarvis v. Jarvis*, 1998 ND 163, ¶ 36, 584 N.W.2d 84. Obviously, this rotating custody arrangement was no longer workable, as evidenced by the parties' lack of cooperation and their subsequent competing motions to amend the original judgment to provide for sole physical custody of the children. The primary physical care of the children had changed to Jean Clark for a period longer than six months, a factor that would support modification of a custody order even within the two-year period under N.D.C.C. § 14–09–06.6(3) and (5). Although Dean Clark argues the referee erroneously disregarded his testimony and evidence, the district court is the determiner of credibility issues in a bench trial and we do not second guess the district court on its credibility determinations. *Manning v. Manning*, 2006 ND 67, ¶ 17, 711 N.W.2d 149. We conclude the referee's finding that a material and significant change of circumstances warranting modification of custody had occurred is not clearly erroneous.

V

[¶ 21] Dean Clark argues the referee's findings on the best-interests factors under N.D.C.C. § 14–09–06.2 are clearly erroneous. A district court's custody decision under the best-interest-of-the-child analysis is subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *See Edwardson v. Lauer*, 2004 ND 218, ¶ 4, 689 N.W.2d 407;

*Schmidt v. Schmidt*, 2003 ND 55, ¶ 5, 660 N.W.2d 196.

[¶ 22] The referee, as well as the district court on review, made specific findings on each of the best-interest factors. The referee found factor (b) favored Jean Clark because she "has always been more involved in education issues, ... has worked harder to impress upon the boys the importance of education," and "has the greater disposition to continue working on these areas." The referee found factors (d) and (e) favored Jean Clark because of the period of time the children had resided with her and the break in continuity caused by Dean Clark's demands for a return to rotating custody and interference with the visitation schedule. The referee found factor (h) favored Jean Clark because, although the youngest child was a "good student who is competitive regarding his academics," the older child began experiencing "behavior issues" at school after a return to the rotating custody arrangement, and because Jean Clark has a more "consistent history of being involved with the children's extracurricular activities and devoting her time to the same." The court found factor (k) favored Jean Clark because Dean Clark's girlfriend disparaged the children's mother in their presence. The referee found only factor (i), the reasonable preference of the children, favored Dean Clark. The referee and the court found the other factors favored neither party.

[¶ 23] The record evidence supports the findings on the best-interest factors, and we conclude the referee's finding that a modification of custody was required in the best interests of the children is not clearly erroneous.

## VI

[¶ 24] Dean Clark argues the referee erred as a matter of law in calculating his child support obligation and in failing to set forth how he arrived at his net income for child support purposes.

[¶ 25] Child support determinations involve varying standards of review depending on the issue appealed. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 6, 710 N.W.2d 113. We apply a de novo standard of review for questions of law, a clearly erroneous standard of review for questions of fact, and an abuse of discretion standard of review for discretionary matters. *Oien v. Oien*, 2005 ND 205, ¶ 8, 706 N.W.2d 81. In *Berge v. Berge*, 2006 ND 46, ¶ 8, 710 N.W.2d 417, we recently explained:

Under N.D. Admin. Code § 75–02[–]04.1–02(10), "[e]ach child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." Because a proper finding of net income is essential to determine the correct amount of child support under the child support guidelines, we have said that, as a matter of law, a trial court must clearly set forth how it arrived at the amount of income and the level of support. *See, e.g., Bladow [v. Bladow]*, 2005 ND 142, ¶ 19, 701 N.W.2d 903; *Olson v. Olson*, 2002 ND 30, ¶ 12, 639 N.W.2d 701; *Heinz v. Heinz*, 2001 ND 147, ¶ 17, 632 N.W.2d 443; *Lauer v. Lauer*, 2000 ND 82, ¶ 3, 609 N.W.2d 450; *Buchholz v. Buchholz*, 1999 ND 36, ¶ 12, 590 N.W.2d 215; *Berg v. Ullman ex rel. Ullman*, 1998 ND 74, ¶ 18, 576 N.W.2d 218. When a trial court does not clearly state how it calculated the amount of child support, this Court will reverse and remand for an explanation even if the record contains adequate evidence for the trial court to make a precise finding. *See Buchholz*, at ¶¶ 12, 17; *Wolf v. Wolf*, 557 N.W.2d 742, 744 (N.D.1996); *see also Heley v. Heley*, 506 N.W.2d 715,

721 (N.D.1993) ("A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines"); *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 877 (N.D. 1992) (same).

[¶ 26] The referee found that "Dean Clark owns a business operated as an S-corporation, and earns from the business a net income of $14,781.24 per month." Based on this finding, the referee ordered that Dean Clark pay $3,487 per month in child support commencing October 1, 2005. Upon Dean Clark's objection in his request for review, the district court ruled "[t]he testimony of Dean and Leonard Sliwo[]ski establishes that Dean's net income was $14,781.24, as found by the Referee." Neither the referee nor the district court clearly explained how Dean Clark's child support obligation was calculated.

 [¶ 27] Jean Clark argues the child support amount is supported by Dean Clark's tax returns, her calculation worksheets, and the testimony of Sliwoski, her expert witness. Even if we assume the referee and the court adopted Jean Clark's calculations, those calculations appear to have added depreciation deductions from the tax returns back into Dean Clark's net income and appear inconsistent with Sliwoski's testimony and affidavits. After the 1999 amendments to the child support guidelines, "[a] trial court cannot include depreciation deductions in income when determining an obligor's child support obligation." *Kobs v. Jacobson*, 2005 ND 222, ¶ 11, 707 N.W.2d 803; *see also Torgerson v. Torgerson*, 2003 ND 150, ¶¶ 14–20, 669 N.W.2d 98. Although Jean Clark argues Dean Clark deducted inappropriate personal purchases in contravention of Internal Revenue Service regulations, "[w]ithout ordering the parties to present more information and making spe-

cific findings of fact, a trial court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not adequately reflect the obligor's income." *Kobs*, at ¶ 8.

[¶ 28] We conclude the referee and the district court erred as a matter of law in setting Dean Clark's child support obligation, and we remand for the preparation of the factual findings necessary to support a child support award. *See Berge*, 2006 ND 46, ¶ 9, 710 N.W.2d 417.

VII

[¶ 29] We affirm the part of the amended judgment granting Jean Clark physical custody of the children, reverse the part on child support, and remand for recalculation of Dean Clark's child support obligation accompanied by an explanation of how the amount was determined.

[¶ 30] WILLIAM F. HODNY, S.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 31] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.